722 So.2d 988 (1998)
STATE of Louisiana
v.
Jerome BENJAMIN.
No. 97-K-3065.
Supreme Court of Louisiana.
December 1, 1998.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Susan E. Talbot, for Applicant.
Dwight M. Doskey, New Orleans, for Respondent.
TRAYLOR, Justice.[*]
Defendant, previously convicted for armed robbery, was convicted by a jury and sentenced to a term of twelve years at hard labor for illegally possessing a firearm after having been convicted of a crime of violence, a violation of La. R.S. 14:95.1. On appeal, the Court of Appeal reversed his conviction and sentence, ruling that the seized firearm was the result of an illegal stop. Finding that the police had a reasonable suspicion that Defendant was committing or was about to commit a criminal offense, we reverse the Court of Appeal and reinstate both Defendant's conviction and sentence.

*989 Facts
On January 9, 1996, New Orleans Police Officers Pollard and Rome, while on patrol, observed Defendant walking near Alabo and Johnson Streets. Pollard and Rome were assigned to the Special Operations Division of the department, a tactical unit in which the officers operate in uniform and in marked police units at the request of the department District Commanders. When the officers came alongside Defendant in their patrol car, he clutched at his waistband and began to run away along Johnson Street. Officer Pollard chased Defendant on foot, while Rome attempted to cut off potential escape routes in the patrol car. Shortly thereafter, Officers Marquez and Thomas, after observing Defendant fleeing from Pollard and Rome, joined the pursuit. Thomas exited the cruiser and followed Pollard and Defendant on foot and Marquez followed Rome in the vehicle.
As the chase wound through back yards and through and over fences, Defendant discarded a handgun. Pollard made a mental note of the location of the abandoned pistol and continued in pursuit. As Pollard tired, Thomas continued to chase Defendant toward where Rome and Marquez waited in their vehicles. Officer Rome apprehended Defendant as he exited a vacant lot a short time later. After Rome informed Defendant of his Miranda rights, Defendant stated that he had abandoned the weapon because he did not want to go back to jail. Pollard returned to the location where he had seen Defendant abandon the weapon and retrieved it. He and Rome then transported Defendant to Central Lockup.

Discussion
The Court of Appeal ruled that the police officers did not have a reasonable suspicion to justify a stop of Defendant, and that because the pistol was discarded when the stop was imminent, its seizure was illegal.
Both the United States and Louisiana Constitutions protect against unreasonable searches and seizures.[1] The justification for a seizure, or "stop," must be objectively reasonable under the "concrete factual circumstances of individual cases." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968). In art. 215.1 of the Code of Criminal Procedure, the Louisiana legislature described the circumstances under which a police officer may stop a person as when "he reasonably suspects [the person] is committing, has committed, or is about to commit an offense." LA.CODE CRIM. PROC. art. 215.1. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); State v. Tucker, 626 So.2d 707 (La.1993).
This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. State v. Belton, 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Belton, 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
Here, Officers Rome and Pollard observed that Defendant, upon seeing the marked police unit, began to run away holding his waistband as if he were supporting a weapon or contraband. These objective facts known to the officers were sufficient to raise a reasonable suspicion that Defendant either was engaging or was about to engage in criminal activity and, thus, justified a stop.
The Court of Appeal ruled that because "it is not a crime to run from the police while clutching one's waistband," the stop was illegal. The Court of Appeal erred. Police to do not have to observe what they know to be criminal behavior before investigating. The requirement is that the officer have a reasonable suspicion of criminal activity.
*990 Because we find that the officers had a reasonable suspicion of criminal activity on the part of Defendant, thus justifying an investigatory stop, the question of whether an "imminent stop" had occurred when Defendant abandoned the firearm, as held by the Court of Appeal, is moot. We note, however, that because the seizure of the weapon was not the result of an illegal stop, Defendant's arrest for possession of the weapon after having been convicted for armed robbery was, likewise, lawful.

Holding
Finding that the police had a reasonable suspicion that Defendant was committing or was about to commit a criminal offense, we reverse the Court of Appeal and reinstate both Defendant's conviction and sentence.
REVERSED.
JOHNSON, J., dissents.
NOTES
[*] Knoll, J., not on panel. See Rule IV, Part 2, § 3.
[1] U.S. CONST. amend. IV (made applicable to the states by the Fourteenth Amendment), Mapp. v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); LA. CONST. art. 1, § 5.