767 So.2d 49 (2000)
STATE of Louisiana
v.
Patrick SCHAFFER.
No. 99-KA-0766.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 2000.
Rehearing Denied May 16, 2000.
*50 Harry F. Connick, District Attorney, Holli Herrle-Castillo, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN R. PLOTKIN, Judge MICHAEL E. KIRBY.
KIRBY, Judge.

STATEMENT OF CASE
On May 5, 1998, a bill of information was filed charging the defendant and Carl E. Gabriel with violating La. R.S. 14:95 relative to possessing a dangerous weapon while in possession of a controlled dangerous substance, i.e. marijuana.[1] At his arraignment on May 11, 1998, the defendant pled not guilty. The defendant filed a motion to suppress the evidence and a motion for preliminary examination. Following a motion hearing on May 28, 1998, both sides submitted the matter. The court recessed the hearing until June 2, 1998. On June 5, 1998 testimony was heard from additional witnesses. Following the hearing the trial court found probable cause and denied the motion to suppress evidence. On September 12, 1998 a twelve-member jury found the defendant guilty as charged of possession of a firearm while in possession of marijuana. On October 15, 1998, the court sentenced the defendant to serve five years at hard labor without the benefit of parole, probation or suspension. The defendant's motion for reconsideration of sentence was denied, and his motion for appeal was granted.

STATEMENT OF FACT
At the motion hearing of May 28, 1998, Officer Cyril Evans testified concerning the events that led to the arrest of the defendant on March 7, 1998. While in the 2800 block of Magnolia, Officer Evans and his partner, Michael Roussel, witnessed the defendant and an unknown black male *51 engage in a hand-to-hand transaction. The two men were facing each other looking down at their hands exchanging something. The defendant was dressed in a black and white Reebok jacket, black pants, and black shoes. The other man was wearing a yellow rain slicker. When the two men spotted the marked police vehicle, they both clung to whatever they had in their hands and stood abruptly. Believing the transaction to be one involving illegal contraband, Officer Evans and his partner stopped their marked police vehicle, exited the vehicle, and approached the two men. Before they reached the two men, the defendant fled through a back driveway. The two officers pursued the defendant to 2822 Clara Street. Officer Evans observed the defendant run into Apartment D and close the door behind him. He radioed his partner to get in position at the back door. Meanwhile another responding unit appeared on the scene. Officer Rene Benjamin came up to the front door with Officer Evans. Officer Evans knocked on the door and identified himself as a police officer. The defendant opened the door. He was dressed in a black T-shirt, black pants, and black tennis shoes. Officer Evans asked the defendant to step outside into the hallway. Officer Evans patted the defendant down for weapons and told him why he was being detained. He noticed at that time that the defendant's shoes were wet and had mud on them. Officer Evans asked the defendant if he owned a black and white Reebok jacket. The defendant stated that he did own such a jacket and offered to go to the room where the jacket was and retrieve it.
Present in the apartment with the defendant were Carl Gabriel, the defendant's sister, and several children. As Officer Benjamin was watching the defendant, Officer Evans looked inside the apartment and observed Carl Gabriel exit one of the bedrooms and walk over to another bedroom in the apartment and close the door to that room.
The defendant indicated that he lived in the apartment, but his sister was the lessee. Officer Roussel spoke with the defendant's sister and asked for permission to search the room in the apartment where the defendant stated the jacket he was wearing was or for any contraband her brother may have brought into the apartment and discarded after he fled the scene. The sister gave Officer Roussel permission to search the room. While Officer Evans detained the defendant and Carl Gabriel, Officer Roussel searched the room where they saw Mr. Gabriel close the door. After Officer Roussel found the contraband, Officer Evans arrested the defendant and Mr. Gabriel and advised them of their rights. Officer Roussel collected the contraband while Officers Evans and Benjamin escorted the defendants to the police vehicle, and then to the police station.
Several small plastic bags of marijuana, a large lump of marijuana on a baking pan, an assault style rifle, and a pistol were seized from the apartment. Officer Evans admitted that he did not see the defendant in possession of the marijuana, the rifle, or the pistol.
At the continuation of the motion hearing, which was held on June 5, 1998, Officer Mike Roussel testified. He stated that on March 7, 1998, he and Officer Cyril Evans were on proactive patrol in the C.J. Pete Housing Development. As they turned off of Washington into the 2800 block of Magnolia Street, they observed a subject in the rain in a yellow rain slicker and another subject in a black and white nylon rain sweatsuit. The two subjects were engaging in what the officers believed was a hand-to-hand drug transaction. After the two officers observed the hand-to-hand transaction, the subjects looked up in a surprised fashion and then kind of pulled apart. As the officers approached, the two men observed the officers, and the suspect who was wearing the black and white nylon type sweatsuit broke away and fled the scene. Officer Roussel momentarily frisked the subject in *52 the yellow rain slicker for weapons and/or contraband. Finding none, he joined his partner in pursuing the fleeing suspect. Officer Evans pursued the defendant to an apartment at 2808 Clara. Officer Roussel secured the rear to prevent an escape. Other officers arrived on the scene to assist. Officer Roussel testified that it had been raining that night. When the defendant came to the door, his shoes appeared to be wet with fresh mud on them. The defendant had discarded the jacket. Officer Evans identified him as the subject he chased into the apartment. Officer Roussel relocated to the front of the apartment and was interviewing the defendant when Ms. Schaffer came out. They told her what had happened and asked permission to check the residence. After she gave permission, Officer Roussel, along with Officers Benjamin and Evans entered the residence. The defendant's sister opened the rear left bedroom door and they observed a large cookie sheet type pan on the bed. The pan had a large amount of green vegetable matter along with several pre-bagged, pink bags containing vegetable matter. They observed an assault rifle leaning in the corner, and they also found a pistol in the apartment. Also recovered from the room was the jacket the defendant had been wearing when they first saw him and gave chase. It was still damp and wet from the rain. Officer Roussel testified that the defendant's sister, Paula Schaffer, gave verbal permission to search her residence and signed a consent form giving permission to search her residence.
At the motions hearing Carl Gabriel testified that on the day in question he had visited his aunt's apartment on Clara Street because his aunt asked him to come over to cut his little cousin's hair. He then stopped by the Schaffer's apartment to visit Patrick Schaffer, a friend. Within ten minutes of his arrival, he heard a lot of noise and knocking. When he heard the knocking, he and the others were in Ms. Schaffer's room, the room to the right side of the door entering the living room. During the investigation he was in the living room. At no point did he touch or enter any door during the investigation. He came directly out of Mrs. Schaffer room into the living room. He had no idea any activity such as that was going on in the apartment.
At the trial of September 22, 1998, the testimony of the two officers was consistent with the testimony given at the motions hearing. Additionally, the parties stipulated that if called Officer John Palm would testify that the matter contained in the bag seized by the officers was marijuana.
The defense called three witnesses. Morris Jones testified that the defendant lived on Willow Street. He further testified that he was the man the police chased the day the defendant was arrested. He stated that he fled from the police and ran to the apartment occupied by the defendant's sister. He was hiding in the closet of the back bedroom while the police were searching the apartment. He testified that he did not see the defendant wearing the jacket that the officers recovered from the closet while he was there. He also testified that he did not see the defendant in the room where the marijuana was being kept. Mr. Jones testified that on the night in question he was wearing black and white nylon NIKE jacket. Betty Schaffer, the defendant's mother, testified that the defendant lived with her and her granddaughter on Willow Street. She testified that the defendant often goes to his sister Paula's house to baby-sit. The only people who live with Paula are her two children Trey and Tiara.
The defendant testified that on the day in question he was at his sister's house visiting. He was meeting Mr. Gabriel there. He arrived at the apartment around a quarter to eight. Five minutes after he arrived, Morris Jones came running through the door. He stated that he was running from the police. The defendant told Mr. Jones to sit down. Three to four minutes later the police knocked on *53 the door. When the defendant answered the door, the officer put a gun in the defendant's face and asked him why he ran from him. The defendant denied running from the officer. The officer questioned the defendant as to why his shoes were wet. He told the officer his shoes were wet because it had been raining. He asked if the defendant lived in the apartment, and the defendant stated that he did not live there. While he was arguing with Officer Evans, Officer Roussel arrived and walked into the house. His sister came out and asked what was going on. The officer told her that if she did not let him search the house she would be going to jail and her children would be going to child protection. Officer Roussel then went into the room and came out with a pan with vegetable matter later determined to be marijuana. The officer then reached in the closet and stated, "Here go the jacket right here."
The defendant testified that he did not know that the marijuana was there prior to the time the police brought it out the bedroom. He further testified that neither of the weapons found in the room belonged to him. He stated that the apartment belonged to his sister. The defendant testified that the Reebok jacket seized by the police belonged to him. He insisted that it was hanging in the closet in the living room when the officers arrived, and that they did not find it on the mattress in the room where the weapons were found.

ERRORS PATENT
A review of the record reveals an error patent in sentencing. The defendant was convicted of violating La. R.S. 14:95(E), which provides: "the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence." In the case at bar, the defendant was not fined, and, thus, the sentence is illegally lenient. However, a lenient sentence is not disturbed on appeal when the State does not raise the issue, State v. McGee, 95-1863 (La.App. 4th Cir.10/18/95), 663 So.2d 495.

DISCUSSION
In his sole assignment of error the defendant argues the trial court erred in denying his motion to suppress evidence.
Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989. On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. Id.
The defendant argues that the officers lacked reasonable cause to stop the defendant because the officers did not testify that they saw any drugs or money exchange hands.
"A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense...." La.C.Cr.P. art. 215.1; State v. Bentley, 97-1552, p. 7 (La.App. 4 Cir. 10/21/98), 728 So.2d 405, 410, writ denied, 98-3213 (La.5/7/99), 741 So.2d 27. "Reasonable suspicion" is something less than the probable cause needed for an arrest, and must be based upon particular facts and circumstances known to the officer at the time the individual is approached. State v. Williams, 98-3059, pp. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144; State v. Smiley, 99-0065, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 743, 745, writ denied, 99-0914 (La.5/14/99), 743 So.2d 651.
The totality of the circumstances must be considered in determining *54 whether reasonable suspicion exists. State v. Mitchell, 97-2774, 98-1128, 98-1129 (La. App. 4 Cir. 2/3/99), 731 So.2d 319, 326. The nature of the area in which the activity of the defendant is observed is relevant; high crime areas are places in which the character of the area gives color to conduct that might not otherwise arouse the suspicion of the officer. State v. Keller, 98-0502, pp. 3-4 (La.App. 4 Cir. 3/10/99), 732 So.2d 77, 78. Flight, nervousness, or a startled look at the sight of police may be one of the factors leading to a finding of reasonable suspicion to stop under La. C.Cr.P. art. 215.1. State v. Poche, 99-0039, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 730, 733.
In the instant case, the facts and circumstances relied on by Officer Roussel and Officer Evans in making the decision to stop defendant were: (1) the officers observed the defendant and another individual engage in what looked like a hand to hand exchange in the rain; (2) when the two men saw the police car they stood up abruptly and clung to the objects they held in their hands; (3) the officers observed these actions while on proactive patrol in the C.J. Peete Housing Development; and (4) when the officers exited their vehicle the defendant fled.
Defendant argues that handing something to another person is an innocent activity, and that flight does not always indicate guilt. The defendant ignores the fact that the exchanged stopped abruptly when the two men noticed the officers' vehicle. This type of behavior has long been accepted as a factor giving rise to reasonable suspicion. See State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Handing something to another person may be an innocent activity. Further, it is not illegal to flee after seeing a police officer. However, in State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, the Louisiana Supreme Court found there was reasonable suspicion for stopping the defendant because he had fled at the sight of the officers. The Court stated:
This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. State v. Belton, 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Belton, 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
Benjamin, 97-3065, p. 3, 722 So.2d at 989.
Here the officers observed activity between the defendant and his companion that was consistent with a drug transaction but which by itself may not have given the officers reasonable suspicion to stop them. However, before the officers could question the two men, the defendant fled. As per the Supreme Court's ruling in Benjamin, the officers had reasonable suspicion to stop the defendant. The combination of the defendant's flight and the observance of activity consistent with a drug transaction gave the officers reasonable suspicion to stop and question the defendant.
Given the totality of the circumstances relied on by Officers Roussel and Evans in attempting to stop the defendant, it cannot be said that the trial court erred in denying defendant's motion to suppress. The court implicitly found the officers had a reasonable basis for wanting to stop the defendant.
Next the defendant argues that even if the stop was justified, the stop exceeded the bounds of a reasonable Terry stop to the extent that it actually constituted an arrest. Here the defendant argues that once they actually talked to him and found no contraband on his person, the investigation should have ended, as the officers had no reason to believe he had committed a crime.
The defendant ignores the fact that a sufficient period of time had elapsed to *55 discard any contraband between the time he ran into the apartment and the time he responded to the knock on the door. He also ignores the fact that while standing in the hallway interviewing the defendant, one of the officers observed Mr. Gabriel exit one room and walk over and close the door to another room. Moreover, according to the testimony of the officers, the defendant was not arrested until after the contraband was found. The officers had ample reason to continue to gather information while interviewing the defendant. The stopping of the defendant did not rise to the level of an arrest until after the apartment had been searched.
Finally, the defendant argues that consent to search the apartment was coerced and was not given voluntarily.
At trial, the defendant testified that Officer Roussel told his sister that she would go to jail and her children to child protection if she did not consent to a search of the house. However, at the hearing on the motion to suppress, there was no mention of coercion on the part of Officer Roussel in obtaining consent to search the apartment. The officers testified that Officer Roussel explained what had occurred and asked for consent to search the apartment for any contraband that the defendant may have brought into the apartment. Clearly, the fact finder did not believe the defendant's testimony. Moreover, as the defendant only challenges the denial of the motion to suppress, the only relevant evidence is evidence presented at that hearing. No allegation of coercion was raised at that hearing, and no testimony was presented to justify a finding that consent to the search was not freely given.

CONCLUSION
The defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
PLOTKIN, J. CONCURS IN PART AND DISSENTS IN PART.
PLOTKIN, J., concurring in part and dissenting in part:
Although I agree with the majority that the trial court did not abuse its discretion in finding that there was no unreasonable search and seizure, I believe that the State failed to prove an essential element of its case, namely that defendant possessed the contraband discovered by the officers.
Appellate counsel only presented in his brief issues relating to the Fourth Amendment claim and thus did not raise the question of whether the evidence presented was constitutionally sufficient to convict defendant. However, in State v. Browder, 471 So.2d 726, 728 (La.App. 4 Cir.1985), this court stated, "Although not specifically assigned as error, the sufficiency of evidence to support the appellant's conviction must be reviewed as per State v. Raymo, 419 So.2d 858 (La.1982)." In Raymo, the Supreme Court stated,
Because the state's case was devoid of evidence of an essential element of the charged offense ... defendant's conviction and sentence must be set aside, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Peoples, 383 So.2d 1006 (La.1980), regardless of how the error is brought to the attention of the reviewing court. State ex rel. Womack v. Blackburn, 393 So.2d 1216 (La.1981); Id., 1220 (Lemmon, J. concurring); cf. State v. Morris, 397 So.2d 1237, 1251 (La.1981) (on rehearing).
419 So.2d at 861. Additionally, "[w]e do not hold that insufficiency of the evidence is an error patent which should be checked in every case. But, if the error comes to the attention of the Court, the Court should recognize it, because no one should be put in prison if he has been convicted on insufficient evidence." State v. Williams, 438 So.2d 1286, 1287 (La.App. 3 Cir.1983) (citing State ex rel. Womack, supra). Finally, it is best to address this issue now as a matter of judicial economy, *56 as otherwise it would most likely be raised in an application for post-conviction relief as an argument that appellate counsel was ineffective because of his failure to designate sufficiency as an assignment of error.
In this case, the officers testified that a clump of marijuana and several small plastic bags of marijuana were found in a bedroom on a baking pan. An assault rifle and an assault pistol were found in the same room. The officers testified that the jacket defendant had been wearing when they chased him was also in that room, as well as a book-bag with three time cards bearing defendant's name. However, the bedroom was also the room which Carl Gabriel entered, closing the door behind him, while the officers were interviewing defendant. Moreover, Officer Evans testified that defendant was never seen with either the guns nor the marijuana; and the officer further stated that, if defendant had been carrying a gun when he ran from them, the officer would have seen it.
La. R.S. 14:95(E) provides for criminal punishment, in pertinent part, "[i]f the offender uses, possesses, or has under his immediate control any firearm ... while in the possession of ... a controlled dangerous substance." Officer Evans' testimony eliminated the possibility that defendant had a firearm before or during his flight into the apartment. Therefore, the State had to prove beyond a reasonable doubt that defendant was the possessor of both the guns and marijuana in the rear bedroom. But it was Mr. Gabriel's entering the rear bedroom and closing its door that aroused the officers' suspicions and prompted them to seek consent to search the apartment. In sum, although the presence of some of defendant's belongings in the bedroom established that defendant had access to and some use of the room, Mr. Gabriel's actions established that he also had such access; and in fact Gabriel was the last person in the room prior to the discovery of the contraband, and his closing the door behind him tended to show, as the officers themselves believed to be the case, that he knew contraband was in the room. Consequently, the evidence presented did not overcome a reasonable doubt that Gabriel was the possessor of the guns and/or the marijuana. In particular, Officer Evans' testimony that defendant could not have had one of the guns when he fledcombined with Gabriel's suspicious behaviorshould have invested the jury with a reasonable doubt that defendant owned the guns and, thus, that he was acting as an armed possessor of drugs, which is essentially the conduct proscribed by La. R.S. 14:95(E).
Accordingly, I would reverse defendant's conviction and enter a judgment of acquittal, as is required by the double jeopardy prohibitions in the state and federal constitutions "when a reversal is based on insufficiency of evidence due to the state's failure to prove an essential element of the offense." Raymo, 419 So.2d at 861. I respectfully dissent.
AFFIRMED.
NOTES
[1] The bill was nolle prosequied as to Carl Gabriel on August 12, 1998.