h KIRBY, Judge.
The defendant, Sidney Mayberry, was charged by bill of information on April 7, 1999, with possession of cocaine in an amount between twenty-eight and two hundred grams. He was arraigned and pled not guilty April 12, 1999. He filed a motion to suppress evidence, which was denied June 23, 1999. He moved to reopen the hearing, but that motion was denied October 5, 1999. He was found guilty as charged January 19, 2000. On January 26, 2000, he was sentenced to fifteen years at hard labor without benefit of parole, probation, or suspension of sentence. He filed a motion to reconsider sentence and a motion for new trial, both of which were denied. He filed a motion for appeal. The State filed a multiple bill. On March 24, 2000, the defendant pled guilty to being a fourth offender. He waived delays. His original sentence was vacated, and he was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

ERRORS PATENT

A review of the record for errors patent reveals none.

J¡STATEMENT OF FACTS

Officer Dominick Imbornone testified that he and his partner, Officer Daniel Scanlan, had received information in early March 1999 that drug activity was taking place at Foucher and Delachaise Streets. Due to a heavy workload, the officers could not follow up on the investigation until March 29, 1999. At that time, Imbornone and Scanlan saw the defendant on the corner of Foucher and Danneel Streets. He matched the given description of being a heavy-set black male with an Afro, dark skinned, and tall. The officers relocated to an area where they could watch the defendant with the help of binoculars. They saw the defendant stand face to face with a man and give him something. The defendant already had his hand out when the officers began watching the men. The man then walked away. The defendant put his hand in his waistband, and also walked away. Within ten minutes, a car pulled up, and pulled to the side of the road. The defendant walked up to the car, received money from the driver, put the money in his pocket, retrieved something from his waistband, and gave the driver an object. The driver drove off. The officers called for another unit to stop the driver, but the driver was not stopped. The apparent narcotics transactions took place at the time of day the informant said they would.
A large crowd had begun to collect around the police car, and the officers were concerned that their investigation would be threatened. The officers drove over to the defendant, who began to walk away. Imbornone’s partner, Scanlan, informed the defendant he was under investigation. Imbornone said that due to the high amount of drug arrests made in that area, he asked the defendant if he was carrying a weapon. The defendant quickly raised his shirt and revealed a clear plastic bag in his navel. Imbornone knew that clear plastic bags often contain |3cocaine. Imbornone grabbed the bag and found that it contained six pieces of crack cocaine. The defendant was arrested and advised of his rights. A search incidental to arrest revealed $114.00 in the defendant’s right pocket, a cell phone, and a *729 key. The officers asked the defendant where he lived. They planned to get a search warrant. However, the defendant yelled into the large crowd that had gathered to go to his house and tell his mother that he had been arrested. He also screamed out “a few other things.” The officers felt that they were then facing an emergency situation and decided to secure the residence. The officers drove to the address the defendant gave them, 8200 Palmetto, Apartment 214. The defendant in fact directed them to the residence and told them where to park. He told them that the gate to the apartment would be unlocked, but that no one would be home. Scanlan went to the apartment, while Im-bornone waited with the defendant.
Scanlan told the same story and added that the first apparent customer they observed studied what the defendant had given him, which indicated to the officers that the man had purchased narcotics. The object was small enough for the man to hold it between his thumb and forefinger. He also said that when the defendant yelled into the crowd, he feared that the defendant was speaking in a code that might alert someone to clean out the apartment — especially because the defendant did not call out a phone number to use to call his mother. At the house, the defendant told Scanlan which of the group of keys that had been seized would open the door. The key worked, and Scanlan went into the residence. The defendant’s stepfather and mother, Mr. and Mrs. Reed, were in the apartment in their bedroom. Scanlan called for his sergeant. When the sergeant appeared, the officers told the parents that they had a consent to search form. The officers told them they felt they had probable cause to search the apartment, but that they would |4have to go back to the station to type out the warrant, and go to a judge. The officers said that the process would take two or three hours and told the parents that they were not under investigation. The officers told them that if they signed the form, they could save time. They read the form to them. The parents said they wanted to sign. They said there was no place in their apartment where they did not have the right to go. Larry Reed signed the form and followed Scanlan into the defendant’s bedroom. Scanlan found a bag in a leather jacket hanging in the bedroom that contained thirty-seven grams of crack cocaine. Scanlan also seized baggies and the defendant’s driver’s license.
On cross-examination, defense counsel attempted to establish that if the defendant had been speaking in code, it was not likely that he would have directed the officers to his house.
The parties stipulated to the amount and the content of the drugs.

ASSIGNMENTS OF ERROR ONE THROUGH FOUR

The defendant puts forth four arguments that the trial court erred in denying his motion to suppress evidence: 1) the stop and frisk were not based on reasonable suspicion, 2) the defendant’s statements concerning where he lived were fruit of the poisonous tree, 3) there were no exigent circumstances that warranted the entry of the apartment without a search warrant, and 4) the police misrepresented facts to Mr. Reed such that his consent was not valid.
This court recently reviewed the law on point in State v. Hall, 99-2887, pp. 3-5 (La.App. 4th Cir.10/4/00), 775 So.2d 52, 56-57: *730 tions to the warrant requirement. State v. Edwards, 97-1797, p. 11 (La.7/2/99), 750 So.2d 893, 901, cert. denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. A trial court’s ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-94.
*729 Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow excep-
*730 La. C.Cr.P. art. 215(A) provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
“Reasonable suspicion” to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737; State v. Clay, 97-2858, p. 4 (La. App. 4 Cir. 3/17/99), 731 So.2d 414, 416, writ denied, 99-0969 (La.9/17/99), 747 So.2d 1096. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, p. 4 (La. App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. See State v. Harris, 99-1434, pp. 2-3 (La. App. 4 Cir. 9/8/99), 744 So.2d 160, 162. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914; State v. Mitchell, 98-1129, p. 9 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299; State v. Keller, 98-0502, p. 2 (La.App. 4 Cir. 3/10/99), 732 So.2d 77, 78. In reviewing the totality of the circumstances, the officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231; State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160. In reviewing a trial court’s ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
Flight from police officers, alone, will not provide justification for a stop. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Sartain, 98-0378, pp. 17-18 (La.App. 4 Cir. 12/1/99), 746 So.2d 837, 849. How *731 ever, flight from police officers is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion to stop. State v. Fortier, 99-0244, p. 7, (La.App. 4 Cir. 1/26/00), 756 So.2d 455, 459-60, citing Benjamin. Further, flight by one’s companion at the sight of police can be a factor in determining reasonable suspicion. Id. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened. Benjamin, supra; Fortier, supra.
In this case, an anonymous caller reported that the defendant sold drugs from a certain corner at a certain time of day. The officers went to the location where they observed the defendant matching the description. They knew the area to have a high incidence of narcotics transactions. They witnessed what their experience taught them were two narcotics transactions. The first customer received a small object that could be held between the thumb and forefinger and studied it. The |7second customer drove down the street, gave the defendant money, received an object and drove away. When the officers approached in their marked unit, the defendant began to walk away. The officers had reasonable suspicion for a stop and frisk at that time.
When the officers asked the defendant if he was carrying a weapon, the defendant quickly raised his shirt without the officer even frisking him. The officers immediately saw a plastic bag protruding from the defendant’s navel. The officers knew that clear plastic bags often contain cocaine, and that drug dealers sometimes store the drugs in their navels. They clearly were correct in seizing the drugs. See, State v. Greathouse, 583 So.2d 137 (La.App. 4 Cir.1991). The defendant was legally arrested, and advised of his rights. He then voluntarily told the officers where he lived. The officers proceeded to the address to secure it because the defendant had yelled into the crowd to alert his mother.
In State v. Page, 95-2401, p. 10 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709, writ den. 96-2352 (La.2/21/97), 688 So.2d 522, this court discussed the war-rantless entry into a protected area:
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320, 1326 (La.1979), cert. den., Rudolph v. Louisiana, 454 U.S. 1142, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a “protected” area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
See also State v. Tate, 623 So.2d 908 (La. App. 4 Cir.1993), writ den. 629 So.2d 1126 and 1140 (La.1993).
|sIn this case, the defendant yelled into the crowd for someone to call his mother and tell her that he was being arrested. Although once in the car the defendant said no one was at the apartment, the officers believed that he had alerted someone to clean out the apartment. Because they feared evidence would be destroyed, exigent circumstances existed for them to *732 secure the apartment while they applied for a warrant.
State v. James, 99-1406 (La.App. 4 Cir. 7/19/2000), 788 So.2d 23, is also instructive. In that case, the officer testified that he asked the appellant if anyone else was in the house. The appellant responded that there was not, but said “yes” when the officer asked if he could go in and check for himself. The appellant denied that he ever consented to any search. The court noted:
[T]he Louisiana Supreme Court sanctioned the ability of a police officer to conduct a protective sweep under similar circumstances in State v. Guiden, 399 So.2d 194, 199 (La.1981), which quoted from United States v. Agapito, 620 F.2d 324, 336 (2nd Cir.1980) as follows:
The reasonableness of a security check is .simple and straightforward. From the standpoint of the individual, the intrusion on his privacy is slight; the search is cursory in nature and is intended to uncover only “persons, not things.” United States v. Bowdach, 561 F.2d 1160, 1168 (5 Cir.1977). Once the security check has been completed and the premises secured, no further search be it extended or limited is permitted until a warrant is obtained. From the standpoint of the public, its interest in a security check is weighty. The delay attendant upon obtaining a warrant could enable accomplices lurking in another room to destroy evidence. More important, the safety of the arresting officers or members of the public may be jeopardized. Weighing the public interest against the modest intrusion on the privacy of the individual, Pennsylvania v. Mimms, 434 U.S. 106, 108-09[, 98 S.Ct. 330, 54 L.Ed.2d 331] (1977); Terry v. Ohio, 392 U.S. 1, 20-21[, 88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), a security check conducted under the circumstances stated above satisfies the reasonableness requirement of the Fourth Amendment.
|9The officer was thus justified, with or without the consent of the appellant, to make a limited protective sweep to be certain that there was no one lurking in the residence who could destroy evidence or pose a danger to the officers or members of the public.
James, pp. 12-13.
In this case, it is arguable that the defendant himself consented to the search by directing the officers to the apartment and telling them how to enter by explaining that a gate was unlocked and which key on a key ring opened the door. However, even if the defendant did not consent, the officers were justified in entering the apartment to secure it. Once at the apartment, the officers were met by the defendant’s parents who shared their apartment with the defendant and said that they had access to all areas in the apartment.
A search warrant is not necessary when lawful consent is given for a search of the premises. State v. Franklin, 95-1876, p. 5 (La.1/14/97), 686 So.2d 38, 41. The burden is on the State to prove that such consent to search was given freely and voluntarily. State v. Edwards, 434 So.2d 395, 397 (La.1983). In State v. Irby, 93-2265, p. 5 (La.App. 4 Cir. 1/13/94), 632 So.2d 798, 800, this court stated:
In order to rely upon the consent exception to the warrant requirement, the State must prove that the consent was freely and voluntarily given. See State v. Wilson, 467 So.2d 503 (La.1985), cert. den. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Brown, 598 So.2d 565 (La.App. 4th Cir.1992), writ den. 605 So.2d 1092 (1992); State v. Valenzuela, 590 So.2d 89 (La.App. 4th Cir.1991) writ den. 593 So.2d 380 (1992), cert. den. *733 Valenzuela v. Louisiana, [506] U.S. [843], 506 U.S. 843, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992). The voluntariness of consent is a question of fact to be determined by the district court under the facts and circumstances of each case, and its determination is entitled to great weight on review. Wilson; State v. Ossey, 446 So.2d 280 (La.1984), cert. den. Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); Valenzuela.
See also State v. Nogess, 98-0670 (La. App. 4 Cir. 3/3/99), 729 So.2d 132; State v. O’Shea, 97-0400 (La.App. 4 Cir. 5/21/97), 696 So.2d 115, writ den. 97-2134 (La.11/14/97), 703 So.2d 631.
In this case, Scanlan said Mr. Reed told him that he had access to all areas of the apartment. The officers told him that they were going to get a warrant, but that if he signed the consent to search form, time would be saved. They explained to the Reeds that they were not under investigation. There was no testimony that Reed was coerced or that his signing of the consent form was not voluntary. The search of the apartment was therefore legal under the consent exception.
The trial court did not err in denying the motion to suppress.
These assignments are without merit.
For these reasons, we affirm the defendant’s conviction and sentence.
AFFIRMED.