TERRI F. LOVE, Judge.
 

 |! This appeal arises from the denial of a motion to suppress evidence. We find that the district court properly denied the motion to suppress and affirm as the defendant was properly detained.
 

 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 The facts of the case
 
 sub judice
 
 were presented during a pretrial motion hearing. One afternoon, Detective Roccaforte (“Det. Roccaforte”), and his partner, Sergeant Sandoz (“Sgt. Sandoz”), were on proactive patrol in an unmarked police vehicle. Det. Roccaforte testified that the unmarked police vehicle was commonly known on the streets as a police vehicle. At the intersection of North Derbigny and Dumaine Streets, they observed a hand-to-hand exchange between Mr. Lazard and an unknown male. The officers could not see what was exchanged; however, they
 
 *494
 
 became suspicious because of the area’s reputation for narcotics and weapons.
 

 Upon seeing the unmarked vehicle, Mr. Lazard alerted the unknown male by pointing in the officers’ direction. The unknown male immediately ran up Du-maine Street, and Mr. Lazard walked swiftly down North Derbigny Street. Det. Roccaforte radioed a description of Mr. Lazard to Detectives Defares (“Det. De-fares”) and Veit (“Det. Veit”), who were nearby in a marked vehicle, and Det. ] gRoccaforte and his partner pursued the unknown male, who was never found. Dets. Defares and Veit observed someone fitting the description of Mr. Lazard enter the passenger side of a white Nissan Maxi-ma on North Derbigny Street. Det. Roc-caforte and his partner relocated to North Derbigny Street and confirmed that it was Mr. Lazard sitting in the passenger seat of the Maxima with the passenger door open. The officers observed Mr. Lazard reaching up near the controls to the sunroof. Mr. Lazard was directed to exit the vehicle, and the officers explained the nature of their investigation. Det. Roccaforte then recognized Mr. Lazard from a previous narcotics investigation. He also noted that Mr. Lazard’s trial on those charges was scheduled for the very next day.
 

 Det. Roccaforte described Mr. Lazard as extremely nervous; he was shaking and could not answer any questions. Det. Roc-caforte conducted a weapons search on Mr. Lazard, and none were found. Based on the officers’ observations and the area’s reputation, a canine unit was requested. While waiting for the canine unit to arrive, Mr. Lazard was handcuffed. The passenger door on the Maxima was closed.
 

 Approximately thirty minutes later, the dog from the canine unit sniffed the exteri- or of the vehicle. When it reached the passenger side of the vehicle, the dog indicated that it had found narcotics. The canine officer opened the vehicle, and the dog searched the interior of the vehicle. It found a small amount of green vegetable matter in the rear passenger seat. The dog also indicated drugs near the control panel of the sunroof. The dog knocked the panel loose, and the officers observed clear bags containing several smaller bags of tan powder that the officers believed was heroin. Mr. Lazard was then placed under arrest, read his
 
 Miranda
 
 rights, and approximately $300.00 was found in his pants pocket during the search Lincident to his arrest. A field test on the substances found by the dog resulted in a positive indication for marijuana and heroin.
 

 Phillip Lazard (“Mr. Lazard”) was charged by bill of information with possession of heroin. He entered a not guilty plea. The district court found probable cause and denied the motion to suppress the evidence. Mr. Lazard pled guilty as charged pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976), reserving his right to appeal the ruling on his motion to suppress the evidence. After waiving delays, he was sentenced to serve ten years at hard labor, to run concurrently with any other sentence. Pursuant to an order issued by this Court in
 
 State v. Lazard,
 
 unpub., 08-0472 (La.App. 4 Cir. 5/6/08), Mr. Lazard was granted an appeal.
 

 Mr. Lazard asserts that the district court erred by denying his motion to suppress the evidence.
 

 ERRORS PATENT
 

 The record reveals no errors patent.
 

 MOTION TO SUPPRESS
 

 Mr. Lazard asserts that the officers lacked reasonable suspicion to conduct an investigatory stop. “Deference should be given to the experience of the police offi
 
 *495
 
 cers who were present during the incident.”
 
 State v. Craft,
 
 03-1852, p. 7 (La.App. 4 Cir. 3/10/04), 870 So.2d 359, 364. In
 
 State v. Thompson,
 
 02-0333, pp. 5-6 (La.4/9/03), 842 So.2d 330, 335, the Louisiana Supreme Court addressed the standard for determining whether an officer has reasonable suspicion to conduct an investigatory stop:
 

 Reasonable suspicion for an investigatory stop is something less than probable cause and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of particular facts and circumstances to justify the infringement on individual’s right to be free from governmental interference.
 
 State v. Varnell,
 
 410 So.2d 1108 (1982);
 
 State v. Bickham,
 
 404 So.2d 929 (La.1981);
 
 State v. Blanton,
 
 400 So.2d 661 (La.1981);
 
 State v. Ault,
 
 394 So.2d 1192 (La.1981)_In determining whether or not reasonable cause exists to temporarily detain a person, the totality of the circumstances, “the whole picture,” must be considered.
 
 State v. Belton,
 
 441 So.2d 1195, 1198 (La.1983) (citing
 
 United States v. Cortez,
 
 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).)
 

 In
 
 State v. Temple,
 
 02-1895, p. 5 (La.9/9/03), 854 So.2d 856, 860, the Court expounded on the analysis of the totality of the circumstances:
 

 In reviewing the totality of circumstances, the reputation of an area is an articulable fact upon which a police officer may legitimately rely and is therefore relevant in the determination of reasonable suspicion.
 
 State v. Buckley,
 
 426 So.2d 103, 108 (La.1983) (citing
 
 United States v. Brignoni-Ponce,
 
 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). The assessment by a reviewing court of the cumulative information known to the officers avoids a “divide- and-conquer analysis” by which the whole becomes less than the sum of its parts because each circumstance examined individually may appear “readily susceptible to an innocent explanation.”
 
 [United States
 
 v.]
 
 Arvizu,
 
 534 U.S. [266] at 274, 122 S.Ct. [744] at 751[, 151 L.Ed.2d 740 (2002)].
 

 Further, in
 
 State v. Benjamin,
 
 97-3065 (La.12/1/98), 722 So.2d 988, the Louisiana Supreme Court found there was reasonable suspicion for stopping the defendant because he had fled at the sight of the officers. The Court stated:
 

 This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop.
 
 State v. Belton,
 
 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause.
 
 Belton,
 
 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
 

 Benjamin,
 
 97-3065, p. 3, 722 So.2d at 989.
 

 In
 
 State v. Schaffer,
 
 99-0766 (La.App. 4 Cir. 4/12/00), 767 So.2d 49, this Court found that flight by the defendant and his companion, coupled with fact that the police officers had observed the two men engaged in activity which was consistent with a drug transaction, gave the officers grounds to stop them. This 15Court noted that the activity which the officers had observed by itself might not have given the officers reasonable suspicion to conduct an investigatory stop.
 
 Schaffer,
 
 99-0766, p. 9, 767 So.2d at 54. However, “[t]he combination of the flight and the observance of activity consistent with a drug transaction gave the officers reasonable suspicion to
 
 *496
 
 stop and question the defendant.”
 
 Schaffer,
 
 99-0766, p. 10, 767 So.2d at 54.
 

 As in
 
 Schaffer,
 
 the officers in the case
 
 sub judice
 
 had reasonable suspicion to stop and question Mr. Lazard. Det. Roccaforte and his partner observed a hand-to-hand exchange between Mr. Lazard and an unknown male that they suspected was a drug transaction based upon them experience and the reputation of the area. Upon seeing the unmarked vehicle, Mr. Lazard alerted the unknown male and quickly walked down North Derbigny Street, while the unknown male ran down Dumaine Street.
 

 Second, Mr. Lazard asserts that there was no basis for the officers to conduct a pat-down search for weapons. This Court explained that, in order to justify a frisk of a suspect for weapons following an investigatory stop, a police officer does not need to be absolutely certain that the suspect is armed, but the facts must justify a belief that the officer’s safety or that of others is in danger.
 
 State v. Jones,
 
 99-0861, p. 12 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 38,
 
 quoting State v. Williams,
 
 98-3059, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144. The pertinent question is “not whether the officer subjectively believes he is in danger, or whether he articulates a subjective belief during his testimony, ... but ‘whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.’ ”
 
 State v. Dumas,
 
 00-0862, pp. 2-3 (La.5/4/01), 786 So.2d 80, 81-82,
 
 quoting Terry v. Ohio,
 
 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 

 | (¡In
 
 Jones,
 
 this Court also acknowledged a drug trade and weapons connection, stating:
 

 [I]n many instances, suspicion of drug dealing itself is an articulable fact that may support a frisk pursuant to La. C.Cr.P. art. 215(B).
 
 State v. Fortier,
 
 99-0244 (La.App. 4 Cir. 1/26/00), 756 So.2d 455 (“We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop [based on reasonable suspicion] relating to drug activities.”), 99-0244 at p. 7, 756 So.2d at 460, quoting
 
 State v. Curtis,
 
 96-1408, pp. 9-10 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1292. See also
 
 State v. Williams,
 
 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142 (officer’s testimony that he frisked a defendant suspected of drug activity to look for weapons for his own safety was sufficient to validate a frisk pursuant to La.C.Cr.P. art. 215(B)). (footnote omitted).
 

 Jones,
 
 99-0861, p. 14, 769 So.2d at 38-39.
 

 Det. Roccaforte stated that he suspected that Mr. Lazard and the unknown man had engaged in a drug transaction. Further, after Mr. Lazard exited the Maxima, Det. Roccaforte recognized Mr. Lazard from a previous narcotics investigation. Because Mr. Lazard was reasonably suspected of dealing drugs, Det. Roccaforte was justified in frisking Mr. Lazard for weapons in order to protect himself during the investigatory stop.
 

 Third, Mr. Lazard avers that the officers’ actions during the investigatory stop amounted to an arrest without probable cause because he was placed in handcuffs while the officers waited for the canine unit to arrive.
 

 In
 
 State v. Adams,
 
 01-3231, p. 2 (La.1/14/03), 836 So.2d 9, 11, the officers detained the female defendant and handcuffed her while they waited fifteen minutes for the arrival of a female officer to
 
 *497
 
 frisk her. The Court found that the mere act of handcuffing did not elevate the stop into an arrest or exceed the scope l7of a
 
 Terry
 
 detention because the handcuffing was utilized “to maintain the status quo during a detention” and that the handcuffing was a “reasonable response to the situation.”
 
 Adams,
 
 at p. 4, 836 So.2d at 12.
 

 In
 
 State v. Porche,
 
 06-0312, p. 2 (La.11/29/06), 943 So.2d 335, 337, the defendant knocked on the door of an apartment that the police were searching. The officers knew that the resident of the apartment had called the defendant.
 
 Id.
 
 The defendant admitted that the resident had called him, but he indicated that he was not sure that he was at the right apartment.
 
 Porche,
 
 06-0312, p. 3, 943 So.2d at 337. The defendant was also visibly nervous.
 
 Id.
 
 When the defendant admitted he had no identification on him but had some at his nearby apartment, the officers handcuffed him and escorted him to his apartment.
 
 Id.
 
 One of the officers used the defendant’s key to open his door, and the officer immediately smelled the odor of chemicals associated with cocaine and saw stacks of money.
 
 Id.
 
 The officers arrested the defendant, but he would not consent to a search of his apartment.
 
 Porche,
 
 06-0312, pp. 3-4, 943 So.2d at 337. The officers then obtained a search warrant and seized a large amount of cocaine.
 
 Porche,
 
 06-0312, p. 4, 943 So.2d at 337. The trial court suppressed the cocaine, and the appellate court upheld the trial court’s ruling. The Supreme Court reversed and discussed the use of handcuffs and its effects on an investigatory stop:
 

 Inherent in the right of the police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention.
 
 [Muehler v. Mena,
 
 544 U.S. [93] at 99, 125 S.Ct. [1465] at 1470[, 161 L.Ed. 2d 299 (2005)] (“ ‘Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.’ ’’)(quoting
 
 Graham v. Connor,
 
 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443 (1989));
 
 United States v. Perdue,
 
 8 F.3d 1455, 1462 (10th Cir.1993)(“Since police officers should not be required to take unnecessary risks in performing their duties, they are ‘authorized to take such steps as [are] reasonably necessary to protect Istheir personal safety and to maintain the status quo during the course of [a
 
 Terry
 
 ] stop.’ ’’)(quoting
 
 United States v. Hensley,
 
 469 U.S. 221, 235, 105 S.Ct. 675, 683-84, 83 L.Ed.2d 604 (1985)).
 

 Nevertheless, the use of handcuffs incrementally increases the degree of force used in detaining an individual.
 
 Mena,
 
 544 U.S. at 99, 125 S.Ct. at 1470 (“The imposition of correctly applied handcuffs on Mena, who was already being lawfully detained during a search of the house, was undoubtedly a separate intrusion in addition to detention in the converted garage.”);
 
 State v. Broussard,
 
 00-3230, p. 4 (La.5/24/02), 816 So.2d 1284, 1287 (“ ‘There is no question that the use of handcuffs, being one of the most recognizable indicia of a traditional arrest, substantially aggravates the intrusiveness of a putative
 
 Terry
 
 stop.’ ’’)(quoting
 
 United States v. Acosta-Colon,
 
 157 F.3d 9, 18 (1st Cir.1998)(internal quotation marks omitted)). Thus, because the police conducting an investigatory stop “may not ... seek to verify their suspicions by means that approach the conditions of arrest,”
 
 Florida v. Royer,
 
 460 U.S. 491, 499, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983), the use of handcuffs must appear objectively reasonable “in light of the facts
 
 *498
 
 and circumstances confronting [the police],” taking into account “the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.”
 
 Graham,
 
 490 U.S. at 397, 109 S.Ct. at 1872;
 
 Broussard,
 
 00-3230 at 4, 816 So.2d at 1287 (“ ‘Thus, when the government seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a
 
 Terry
 
 stop, it must be able to point to some specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purpose of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm.’ ”)(quoting
 
 Acosta-Colon,
 
 157 F.3d at 18-19). If the added intrusion is not warranted under particular circumstances, a
 
 Terry
 
 stop may escalate into a de facto arrest requiring probable cause to render it valid.
 
 United States v. Melendez-Garcia,
 
 28 F.3d 1046, 1053 (10th Cir.1994)(“Because the specific nature of this stop [in which defendant was handcuffed and strapped into a police cruiser] was not justified under the
 
 Terry
 
 doctrine, we must treat it as an arrest, requiring probable cause.”);
 
 Broussard,
 
 00-3230, pp. 3-4, 816 So.2d at 1287 (“[B]revity alone does not always distinguish investigatory stops from arrests, as the former may be accompanied by arrest-like features, e.g., use of drawn weapons and handcuffs, which may, but do not invariably, render the seizure a de facto arrest.”)(citing
 
 Acosta-Colon,
 
 157 F.3d at 18-19)(emphasis added).
 

 Porche,
 
 at pp. 7-9, 943 So.2d at 339-340. The Court then determined that under the circumstances, including “the brevity of respondent’s detention in handcuffs 13before he was lawfully arrested, and the changing nature of the police investigation which had begun to focus on a possible link of respondent and Young to narcotics trafficking, and giving due deference to the decisions made in the field by police officers under the press of ‘tense, uncertain, and rapidly evolving’ circumstances, handcuffing and escorting the defendant to his apartment to get his identification did not escalate the detention to an arrest.”
 
 Porche,
 
 at pp. 10-11, 943 So.2d at 341,
 
 quoting Graham,
 
 490 U.S. 386, 397, 109 S.Ct. 1865.
 

 As in
 
 Porche,
 
 Mr. Lazard was handcuffed for only a brief time until he was formally arrested. Further, Det. Rocca-forte recognized him from prior narcotic activity. Mr. Lazard was scheduled to appear for trial on those charges the next day. Thus, Mr. Lazard may have become a flight risk, particularly in light of the extent of his nervousness and inability to speak. Hence, by handcuffing Mr. La-zard, the officers maintained the status quo during his detention while they awaited the arrival of the canine unit.
 
 [1]
 

 Lastly, Mr. Lazard contends that the officers were required to obtain a war
 
 *499
 
 rant prior to searching the vehicle despite the alerts given by the dog while sniffing the exterior of the Nissan. This assertion lacks merit.
 

 The dog “sniffing” the Nissan parked on the street was not a “search” within the meaning of the Fourth Amendment.
 
 See U.S. v. Place,
 
 462 U.S. 696, 707, 103 S.Ct. 2687, 77 L.Ed.2d 110 (1988);
 
 State v. Boudreaux,
 
 98-2306, p. 5 (La.App. 4 Cir. 1/26/00), 752 So.2d 304, 307. Once the dog alerted to the passenger side of the car, the officers had probable cause to search the car without first obtaining a warrant (which would Imhave included the dog sniffing inside the vehicle).
 
 See State v. Short,
 
 02-2766, p. 4 (La.App. 4 Cir. 1/22/03), 839 So.2d 173, 175-76,
 
 citing Maryland v. Dyson,
 
 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999),
 
 United States v. Ross,
 
 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Further, once the canine knocked the control panel of the sunroof loose, the bags containing the heroin were in plain view of the officers.
 

 Thus, the officers had reasonable suspicion to initially detain Mr. Lazard and were justified in conducting a pat-down search for weapons. Under the circumstances, the continued detention of Mr. Lazard until the canine unit arrived was reasonable, and the seizure of the drugs and arrest of Mr. Lazard were based on probable cause.
 

 DECREE
 

 Accordingly, we find that the district court did not err in denying Mr. Lazard’s motion to suppress the evidence and affirm.
 

 AFFIRMED.
 

 [1]
 

 .
 
 See also State v. Miller,
 
 00-1657 (La.10/26/01), 798 So.2d 947, where the Court held that the officers were justified in detaining the defendant, stopped for a traffic violation, for almost an hour while waiting for a canine unit to arrive. The Court found that although the officers did not have probable cause to arrest the defendant for an offense during this time period, her answers to their questions gave them reasonable suspicion of criminal activity, and the duration of the wait for the canine unit “reasonably correlated with the escalating level of suspicion as the officers pursued a means of investigation likely to confirm or dispel the trooper’s suspicions without unnecessary delay.”
 
 Id.
 
 at p. 4, 798 So.2d at 950.