713 So.2d 642 (1998)
STATE of Louisiana
v.
Kenneth P. POMEROY.
No. 97-KA-1258.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1998.
*643 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Ellen S. Fantaci, Deborah Villio, Assistant District Attorneys, Gretna, for Plaintiff/Appellee.
Bruce G. Whitaker, Louisiana Appellate Project, Gretna, for Defendant/Appellant.
Before GRISBAUM, GAUDIN and GOTHARD, JJ.
GOTHARD, Judge.
Defendant, Kenneth Pomeroy, appeals his conviction and sentence on a charge of driving while intoxicated (D.W.I.), third offense. For reasons that follow, we affirm.
On the afternoon of February 12, 1997, Pomeroy was driving his 1984 Ford Thunderbird when he failed to successfully negotiate a curve on Laroussini Street in Westwego and hit a parked van. Officer Barbara Taylor of the Westwego Police Department responded to the call concerning the accident and observed Pomeroy standing in the street. When she approached Pomeroy, Officer Taylor detected the smell of alcohol. She also testified that Pomeroy was swaying and his speech was slurred. She observed an open beer can in the car Pomeroy told her he was driving. It was subsequently ascertained that Pomeroy was driving without a license.
Officer Taylor questioned Pomeroy, who maintained that he lost control of his car when he went around the corner. When Officer Taylor asked defendant if he had been drinking alcohol, he said that he had four beers. Based on her observations and Pomeroy's statements, Officer Taylor administered three field sobriety tests.
*644 At a trial on the merits, Officer Taylor fully explained the three field sobriety tests. One was a horizontal nystagmus test, which required defendant to follow a pen with his eyes. A second test required defendant to attempt to follow a straight line, walking heel-to-toe for nine steps. The third test required defendant to balance on one leg for thirty seconds. Before defendant started the tests, Taylor demonstrated how they were to be performed. She also asked defendant if he had any physical disabilities which might impede his ability to complete the tests. Defendant denied any such disabilities. Taylor testified that defendant performed poorly on all three tests.
Taylor asked defendant to submit to an Intoxilyzer breath test, to measure his blood alcohol level. Defendant refused to take the Intoxilyzer test, stating that he believed he would fail it because he drank four beers too fast. Taylor placed defendant under arrest for suspicion of driving while intoxicated, and advised him of his Miranda rights.
Sergeant Dominic Bush transported defendant to Westwego Police Headquarters. He advised defendant of his rights with respect to chemical testing for intoxication. Defendant again refused chemical testing. At about 5:30 p.m., Officer Taylor again advised defendant of his Miranda rights, and conducted a standard interview with him. In response to Taylor's questioning, defendant admitted that he had consumed four twelve ounce beers. When asked whether he was under the influence of alcohol, defendant admitted he was. Defendant also informed Taylor that he was experiencing pain from a pre-existing back injury, and that this injury sometimes prevented him from putting all his weight on one leg. After the interview was concluded, Officer Taylor transported defendant to the Jefferson Parish Correctional Center for booking.
Captain Merril Boling, an expert in fingerprint analysis, testified that he examined the fingerprints on State's Exhibit 10, purported to be defendant's arrest register for the substantive offense. He compared the prints to those on the arrest registers from defendant's alleged prior D.W.I. convictions. Boling testified that in his expert opinion, each set of prints was made by the same person. The state also introduced documentation of defendant's prior guilty pleas. These were admitted over defendant's objections.
Defendant testified on his own behalf at trial. He stated that the roads were wet from an earlier rain, and this caused him to lose control of his car when making the turn onto Laroussini Street. Defendant further testified that he had consumed three beers on February 12, over the course of several hours. He drank only a small portion of the beer found in his car. He was not intoxicated at the time of his arrest, but was simply shaken by the accident. His poor performance on the field tests was the result of his pre-existing back injury. Defendant demonstrated for the jury how the injury affected his ability to walk properly. On cross-examination, he admitted that he has been arrested for D.W.I. before and was driving without a license at the time of this accident.
The state called deputy Michael Louis as a witness on rebuttal. Louis testified that he had transported defendant to court that day, and defendant had walked normally at that time.
After the trial, the jury unanimously found the defendant guilty as charged. He was subsequently sentenced to serve thirty months imprisonment at hard labor, one year of which was to be served without benefit of parole, probation, or suspension of sentence. Defendant moved for and was granted a timely motion for appeal.
In brief to this Court, defendant assigns three errors for our review. He asserts that the trial court erred in denying his motion to suppress his inculpatory statement, that there is insufficient evidence to support the conviction, and seeks review of the record for errors patent.
In his first assignment of error, defendant argues that a motion to suppress, heard before the trial on the merits, should have been granted. This argument concerns the defendant's statement to Officer Taylor that he had four beers the day of the accident. Defendant maintains that the inculpatory statement was made during a custodial interrogation, in which he was not advised of his rights *645 pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966).
The protections of Miranda are only applicable when a person is the subject of a custodial interrogation. In the determination of whether a person is the subject of a custodial interrogation, the federal court devised a four-part test which examined the following factors:
1. whether there was probable cause to arrest the defendant;
2. whether the investigation was focused on the defendant at the time of the interrogation;
3. whether the investigator had a subjective intent to hold the defendant; and
4. whether the defendant subjectively believed that his freedom was significantly restricted.
United States v. Carollo, 507 F.2d 50 (5th Cir.), cert. den. 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 105 (1975). Subsequently, our state courts adopted and followed this four part test. See, State v. Thompson, 399 So.2d 1161, 1165 (La.1981).
Since that time the United States Supreme Court has developed an analysis which substantially undermines the four-part test previously developed by the courts. In that new analysis, the Supreme Court has separated the concept of probable cause to arrest and the subjective perceptions of either the interrogating officer or the defendant from the issue of custody. The high court has explained that the only relevant inquiry in determining whether there was a formal arrest of a restraint on freedom of movement of the degree associated with an arrest is "how a reasonable man in the suspect's position would have understood the situation". Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).
Using that analysis, the federal courts abandoned the four-part test and adopted an alternate analysis using a "reasonable person" test. United States v. Bengivenga, 845 F.2d 593 (5th Cir.), cert. den. 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988). The Bengivenga court held that a suspect is "in custody" for Miranda purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest. Id., 845 F.2d at 596; State v. Hammond, 97-1677 (La.App. 4 Cir. 12/30/97), 706 So.2d 530.
In Berkemer v. McCarty, supra, the defendant was pulled over by an officer for driving erratically. At the officer's request, the defendant exited his car. The officer noted that the defendant was having difficulty standing. At that point the officer determined that the defendant would be charged with a traffic offense, and therefore his freedom to leave the scene was terminated. The officer then conducted a field sobriety test, and the defendant performed poorly. While still at the scene of the stop, the officer asked the defendant if he had been using intoxicants. The defendant responded that he had consumed two beers and several joints of marijuana. The officer then placed the defendant under arrest. At no time during that sequence of events was the defendant informed of his right to remain silent under Miranda. He was subsequently charged with driving under the influence of drugs and alcohol. He moved to exclude the inculpatory statement he had made to the officer. When the trial court denied the motion, the defendant pled guilty. The defendant then appealed his conviction.
The Supreme Court held that the roadside questioning of a motorist pursuant to a routine traffic stop does not constitute custodial interrogation for purposes of the Miranda rule. First, the Berkemer court reasoned, traffic stops are "presumptively temporary and brief." 468 U.S. at 437, 104 S.Ct. at 3149.
The vast majority of roadside detentions last only a few minutes. A motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short time answering questions and waiting while the officer checks his license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way. Id.

In contrast, station house interrogations may be of longer duration, and are generally conducted *646 in an environment where the reasonable person might feel he will be questioned until the officers are given the answers they seek. The Berkemer court further noted that traffic stops are less "police dominated" than station house interrogations. The public nature of a traffic stop reduces the hazard that officers might resort to pressure tactics in order to elicit incriminating responses. Id. at 438-39, 104 S.Ct. at 3149-50.
We find that under the reasoning in Berkemer, supra. the officer's failure to advise defendant herein of his Miranda rights before questioning him did not violate defendant's Fifth Amendment rights.
Defendant further complains that the statements he made at the police station, although they were made after he was advised of his Miranda rights, should have been excluded as "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Because we find that the statement at the scene of the accident was admissible, this issue is moot.
In his second assignment of error, the defendant argues that the evidence was insufficient to support the verdict of third offense D.W.I. because the guilty pleas used for the predicate offenses were obtained without assistance of counsel or proper waiver of defendant's right to counsel, and are therefore constitutionally infirm. Defendant also alleges that he was not properly advised of his rights under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
The contemporaneous objection rule prohibits defendant from seeking review of this issue on appeal. LSA-C.Cr.P. art. 841. At trial the state offered transcripts of the guilty plea proceedings and waiver of rights forms as proof of defendant's predicate D.W.I. convictions. Defense counsel objected to the admission of the documents on grounds that the waiver of rights forms were not dated. The trial court overruled counsel's objections and admitted the documents into evidence. Counsel did not, as part of his objection, allege any deficiency in defendant's waiver of his right to counsel. A defendant is limited on appeal to the grounds for objection articulated at trial. State v. Jackson, 450 So.2d 621, 634 (La.1984); State v. Holstead, 354 So.2d 493 (La.1977).
In our review for errors patent on the face of the record, we note that the bill of information and the commitment incorrectly cite LSA-R.S. 14:98.3 as the relevant statute. Defendant was charged with operating a motor vehicle while under the influence of alcohol, third offense, a violation of LSA-R.S. 14:98. He was sentenced pursuant to LSA-R.S. 14:98 D(1). Where, as in the matter before us, despite the technical insufficiency in the bill of information, it fairly informs the accused of the charge against him and the defect does not prejudice him, objection to it may not be raised for the first time after conviction. State v. Dowling, 387 So.2d 1165 (La.1980); State v. Watkins, 594 So.2d 501 (La.App. 5 Cir.), writ den., 600 So.2d 654 (La.1992).
The commitment is also inaccurate in that it indicates that the defendant pled guilty to the offense charged, when, in fact, he was convicted by a jury after a trial on the merits. Accordingly, we order the commitment to be amended to reflect the correct statute and to show that the defendant was convicted after a trial by jury.
We also note that the defendant was given an illegally lenient sentence, in that the mandatory $2,000.00 fine was not imposed, and the trial court failed to require the defendant to participate in a court-approved substance abuse program and/or a driver improvement program in accordance with LSA-R.S. 14:98 D(1). However, because neither the state nor the defendant has raised this issue, this Court will not amend or set aside the illegally lenient sentence on its own motion. State v. Fraser, 484 So.2d 122 (La. 1986); State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445.
Further, the trial court failed to advise the defendant of the three-year time limit for filing an application for post conviction relief as required by LSA-C.Cr.P. article 930.8.
For the foregoing reasons, the conviction and sentence are affirmed. The matter is *647 remanded to the trial court with instructions to amend the commitment to reflect the correct statute under which defendant was convicted and sentenced, and to reflect that the defendant was found guilty by a jury after a trial on the merits. The trial court is further ordered to send written notice of the three-year time limit for filing an application for post conviction relief as required by LSA-C.Cr.P. article 930.8. to the defendant within ten days of the rendering of this opinion, and to file written proof in the record that defendant received such notice. State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.