836 So.2d 9 (2003)
STATE of Louisiana
v.
Alishia ADAMS.
No. 2001-KK-3231.
Supreme Court of Louisiana.
January 14, 2003.
*10 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, David Sullivan, Gregory P. Welsch, Counsel for Applicant.
*11 Frank J. Larre, Metairie, Counsel for Respondent.
PER CURIAM.
We granted the state's application to reverse the ruling of the trial court that a second frisk of respondent by a female police officer minutes after a male police officer had conducted a cursory pat-down following an investigatory stop required suppression of a plastic bag filled with rocks of cocaine found in the waistband of respondent's underwear. For the reasons that follow, the second frisk of respondent did not exceed the permissible scope of an investigatory detention and self-protective search for weapons authorized by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and La.C.Cr.P. art. 215.1.
On the night of March 7, 2001, New Orleans Police Officer Robert Hickman and his partner, on routine patrol in a marked unit, spotted four individuals standing on the sidewalk in the middle of the 1200 block of Columbus in front of the parking lot of an apartment complex. Although the officers were aware that there had been several recent robberies and murders in that area, they had no intention of investigating any of the individuals, all of whom they took for African-American males. However, as the patrol unit neared the group, respondent made eye contact with Officer Hickman, then turned and ran into the parking lot, reaching behind her back to her waistband. Respondent then knelt down behind one of the cars parked in the lot. The other three individuals remained standing on the sidewalk. Officer Hickman "kind of sped up," then stopped as his partner got out of the patrol unit, and ordered respondent out from behind the vehicle. Respondent removed her hands from behind her back and came up, announcing, "I'm a girl." Officer Hickman testified at the hearing conducted on respondent's motion to suppress that he radioed for a female police officer while his partner gave respondent a cursory pat-down that avoided "feeling the crotch area where weapons can be concealed." The officers then placed her in handcuffs "just to give us some kind of security until the female officer arrived to do a thorough pat-down." While they waited, Hickman and his partner ran the identifications of the three other individuals through the police computer and discovered no outstanding warrants or attachments. Hickman estimated that it took no more than 10 or 15 minutes for the female officer to arrive. When she frisked respondent, the officer found a piece of plastic wrapped around 31 rocks of cocaine stuck in the waistband of respondent's underwear which protruded over the top of her baggy pants. The officers immediately placed respondent under arrest for possession of cocaine.
In ruling on the motion to suppress, the trial court was fully aware of the Supreme Court's decision in Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), that unprovoked flight of an individual through a high-crime area in response to the approach of the police gives rise to reasonable suspicion for an investigatory stop. The court therefore did not question the legality of the initial stop and frisk of respondent, and the record fully supports its determination in that regard. Respondent's flight, furtive gesture in reaching behind to her waistband, and her attempt to conceal herself behind the vehicle parked in the apartment complex lot located in an area that had become known for its violent crime, clearly provided the particularized objective basis for an investigatory stop. United States v. Arvizu, 534 U.S. 266, 272, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002); United States v. Cortez, *12 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); State v. Kali, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881. Those same circumstances, particularly respondent's furtive gesture to her waistband, also provided an objectively reasonable basis for the officers to conduct a self-protective search for weapons on grounds that "`a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" State v. Dumas, 00-0862, p. 3 (La.5/4/01), 786 So.2d 80, 82 (quoting Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883).
Nevertheless, the court noted that the officers had already frisked respondent before they made the decision to hold her on the scene in handcuffs for the female officer. In the court's view, the officers had thereby gone beyond Wardlow and expanded the encounter into an arrest for which they did not have probable cause. The court therefore granted the motion and suppressed the cocaine taken from respondent. The court of appeal found no abuse of discretion in that ruling. State v. Adams, 01-1694 (La.App. 4th Cir.11/15/01).
The lower courts erred. We have previously recognized that the use of handcuffs is ordinarily associated with an arrest, an extended restraint on liberty, and not with an investigatory stop, a comparatively lesser intrusion on an individual's freedom and privacy interests. State v. Broussard, 00-3230 pp. 3-4 (La.5/24/02), 816 So.2d 1284, 1287 ("[B]revity alone does not always distinguish investigatory stops from arrests, as the former may be accompanied by arrest-like features, e.g., use of drawn weapons and handcuffs, which may, but do not invariably, render the seizure a de facto arrest.") (citing United States v. Acosta-Colon, 157 F.3d 9, 18-19 (1st Cir. 1998)). Nevertheless, particular circumstances may reasonably warrant such measures. United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir.1994)(government must show that "the facts available to the officer would warrant a man of reasonable caution in the belief that the action taken was appropriate.")(internal quotation marks and citation omitted). In the present case, we find that the handcuffing of respondent to maintain the status quo during a detention which lasted no more then 15 minutes until the female officer arrived constituted a reasonable response to the situation that did not turn an otherwise valid investigatory stop into a de facto arrest.
The officers' decision to defer the frisk to a female officer was not unusual in New Orleans. See State v. Temple, 01-1460 p. 2 (La.App. 4th Cir.6/19/02), 821 So.2d 738, 740 ("Officer Davis radioed Officer Lizell Brooks, a female officer, to conduct a pat down search of [the female suspect]."). While Hickman did not discuss in his testimony at the suppression hearing the official policy of the New Orleans Police Department in that regard, we note that police departments around the country have specific regulations and provide specific training governing the pat-down or searches of female suspects by male officers. See, e.g., Casas v. City of Overland Park et al., 00-2112-CM, 2001 WL 584426, at *2, 2001 U.S. Dist. LEXIS 6952, at *5 (D.Kan.May 14, 2001) ("Part of the Academy instruction [for the state police in Kansas] ... in the proper methods for cursory, pat-down or Terry searches ... includes instruction that officers should seek assistance from a female officer to search a female detainee. If a female officer is not available the officer may do the search himself with a second officer present and in view of the video in his police cruiser. Officers are instructed to use the blade of the hand or the back *13 of the hand to avoid the appearance that the officer is groping the female detainee."); Swales v. Township of Ravenna, 989 F.Supp. 925, 932 (N.D.Ohio 1997)(practice of the Ravenna Township Police Department is to have "female officers do `Terry' searches of female suspects"); State v. Guy, 172 Wis.2d 86, 492 N.W.2d 311, 312 (1992)("Milwaukee police procedure calls for female officers to frisk female suspects when possible.").
In fact, deference of male police officers to female officers in conducting the frisk of female suspects appears a common, if certainly not exclusive, practice throughout the country, one which reflects the "[s]ocial sensitivity about stereognosis of ... the breasts and genital area of a female suspect...." United States v. Kelly, 913 F.2d 261, 267 (6th Cir.1990)(Merritt, C.J., concurring). See United States v. Banshee, 91 F.3d 99, 101 (11th Cir.1996)(officer conducted pat-down of female suspect only after radioing for a female officer and learning that none was available); United States v. Dale, 44 F.Supp.2d 818, 820 (E.D.Tex.1999)(officers waited approximately 10 minutes for a female officer to arrive to pat-down bulges observed at the waist in front of female suspects); State v. Stallworth, 645 So.2d 323, 324 (Ala.Cr.App.1994)("Because no other female officer was at the scene ... another officer was called to take Stallworth to the police department to be searched."); State v. Williams, 249 Neb. 582, 544 N.W.2d 350, 351 (1996)("Williams was instructed to place her hands against a kitchen cabinet so a female officer could conduct a pat-down search for weapons.").
This deference is not required by the Fourth Amendment, see Collier v. Locicero, 820 F.Supp. 673, 678 (D.Conn.1993)("Given the nature of a frisk, and given the relatively low proportion of police officers who are female, it would be substantial burden on police work to require that every frisk of a lightly clad female subject be conducted by a female officer."), but it is surely reasonable in view of the social sense of propriety that remains, and the litigation that often results, when a male officer places his hands on a female suspect's body. See, e.g., Casa v. Overland Park, 00-2112-CM, 2001 U.S. Dist. LEXIS 6952 at * 8, 2001 WL 584426, *3 (police officer convicted of sexual battery and removed from the force, then sued under 42 U.S.C. § 1983, for conduct in which he "touched plaintiffs vaginal area all the way across her crotch, stuck his hand between her legs in a banana shaped movement from her buttocks to the front of her crotch .... then began to feel plaintiff's breasts from outside her tee-shirt and her sweater ... rubbed around and over plaintiff's breasts and squeezed her breasts ... for about forty-seven seconds."); Garcia v. New York State Police Investigator, 138 F.Supp.2d 298, 310 (N.D.N.Y.2001)(summary judgment granted defendant police officer in a civil action brought under 42 U.S.C. § 1983 by a plaintiff for a frisk in which the officer began with her legs "by patting them down with both hands on one leg and then coming up and ... putting his hands on the inner thigh up towards the groin area, cupping it, and then coming down the other side .... then came up and ... ran the side of his hand, with the little finger touching [her], perpendicularly down the middle of [her] breasts .... [then] lifted one breast up and the other one up [by cupping the bottom half of the breast] and then ... continued around the back....")(internal quotation marks and some internal brackets omitted). A jurisprudential rule requiring a male officer to conduct an immediate, thorough pat-down of a female suspect or not at all may lead to alternatives that place the officer and his partner at risk. See State v. Pittman, 111 *14 N.C.App. 808, 433 S.E.2d 822, 823 (1993)("Because no female officer was present to conduct the search [the officer] conducted a visual inspection by ordering [the defendant] to open her pockets and looking inside of them.").
Given these considerations, we conclude that the Fourth Amendment neither compels nor precludes a male police officer's decision to defer the frisk of a female suspect he is otherwise lawfully entitled to perform to a female officer and that he may do so under circumstances in which the detention of the individual is not unduly prolonged and the safety rationale for conducting such searches is not outstripped. In the present case, the initial frisk conducted by Officer Hickman's partner by design did not include respondent's groin area, "a common area for weapons to be hidden." Kelly, 913 F.2d at 264. The officers solution to this situation, handcuffing respondent for safety's sake and for the few minutes it took a female officer to arrive while they conducted identification and warrant checks on the three other individuals who had been standing on the sidewalk with respondent, appears entirely reasonable. See In re Kelsey C.R., 243 Wis.2d 422, 626 N.W.2d 777, 790-91 (2001) ("Because the nearest female officer was downtown, the officers and Kelsey had to wait 20 minutes for the female officer to arrive.... [T]he detention of Kelsey lasted only long enough to fulfill the purpose of the stop."); see also United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)(20-minute investigatory stop reasonable). As to the recovery of the cocaine packet in the ensuing frisk conducted by the female officer, Hickman could not recall what kind of top respondent had been wearing and the female officer who retrieved the packet did not testify at the suppression hearing. It is therefore unclear from the record whether the cocaine packet tucked in the band of respondent's underwear protruding over the top of her baggy pants came within the plain view of the officer as she conducted the frisk or whether the officer felt the packet as she was patting down respondent's waist and groin area. In either case, the plain view or plain feel of a plastic wrapping containing rock-like objects gave the officers probable cause to arrest respondent for possession of cocaine. Broussard, 00-3230 at 7-8, 816 So.2d at 1289; State v. Wilson, 00-0178, p. 4 (La.12/8/00), 775 So.2d 1051, 1053.
We therefore reverse the ruling of the trial court and remand this case to the court for further proceedings consistent with the views expressed herein.