JOY COSSICH LOBRANO, Judge.
|;The State of Louisiana charged the defendant, Dannell Barabin, with illegal possession of stolen goods valued at least $500 but less than $1500, a violation of La. R.S. 14:69B(2). The defendant pled not guilty. After the trial court denied the defendant’s motions to suppress the evidence and statement, he withdrew his guilty plea and pled guilty to the charge pursuant to State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to appeal the denial of his two motions. The trial court sentenced the defendant to serve one year at hard labor. He timely appealed. For the reasons that follow, we affirm the defendant’s guilty plea and sentence.
The only facts of the offense were adduced at the hearings on the motions to suppress the evidence and his statement. At the first hearing, Detective Angel Wilson testified that she responded to a call concerning an automobile burglary that occurred at 5400 Magnolia Street. The victims told her that an iPad and other property had been stolen from their car, and they were tracking the location of the stolen iPad through an app that they had on another iPad. They told her that the signal on the stolen iPad indicated that it was at General Pershing and Magnolia Streets. Det. Wilson called for backup and went to that location, which was a four-plex apartment building. The officers knocked on several doors but got no |2response, and Det. Wilson returned to the victims’ house, while the other officers remained on the scene where the stolen iPad had been tracked. Det. Wilson testified that the other officers eventually contacted her and told her that they had found the stolen iPad and the other stolen items. The officers told her that they had received permission at the scene from the defendant’s father to search the residence. Det. Wilson relocated to the defendant’s apartment, where the defendant had already been detained. She was directed to his bedroom, where the officers found the iPad, a gold Coach wallet, an iMac computer, and a credit card in the name of one of the victims.
At the second hearing, Detective Sa’Bri-na James testified that she was one of the backup officers who responded to Det. Wilson’s call. The victims told her that they had arrived at their residence late the night before from out of town and had not bothered to unload their vehicle. The next morning, they discovered that someone had burglarized the car, taking several items, including the iPad. She and other officers tracked the iPad to 2794 Gen. Pershing, Apt. B. She stated that no one answered the door when they first knocked at the apartment, and they went to the neighbors’ apartment. After the neighbors indicated that they thought someone was in the other apartment, the officers returned to the apartment.
Det. James testified that the door to the apartment was open, and they saw a small child and a man sweeping the floor, whom they learned was the defendant’s father. The officers identified themselves and ex *1123 plained that they were investigating a burglary that had led to the apartment. .They asked if anyone else was in the apartment, and the man responded that his son, the defendant, was in the rear bedroom. In response to the officers’ request that the man have his son step out and speak with them, the man went to the back bedroom and knocked on the Rdoor. After a time, the defendant answered the bedroom door and then entered the living room of the apartment where the officers were waiting. The officers advised the defendant of the investigation, including a summary of some of the items taken, and he became nervous and began pacing back and forth toward a storage room, stating that the only computer in his bedroom was his HP computer. The officers asked the defendant’s father if he would consent to a search of the bedroom, and the father agreed and signed a consent to search form. At that point, the defendant stated that the victims’ property was in his bedroom. The officers went into the bedroom and saw an iPad, an iMac computer, a LSU debit card in the name of one of the victims, a Coach wallet, and luggage that was found to contain the victims’ clothing. The officers then advised the defendant of his Miranda warnings, placed him under arrest, seized the stolen property, and transported him to the police station.
Det. James testified that the officers handcuffed the defendant in the living room, before his father consented to a search of the bedroom, because he kept pacing toward a storage room that abutted the room, and they were concerned for their safety. She explained that the officers did not ■ ask the defendant for his permission to search the bedroom. She stated that the officers advised the defendant of his rights when they found stolen items and again at the police station, after which he gave a statement wherein he insisted that he had gotten the items from a private seller on Craig’s List.
The defendant testified only on the subject of the suppression of the evidence. He stated that he was twenty years old and employed at a library. He testified that he did not share his bedroom with anyone else; he was the only person authorized to enter the room; and he kept the door locked at all times. He | 4 insisted that the door was locked when his father knocked on it on the morning of his arrest. He testified that the officers did not ask his permission to enter the bedroom, and he did not consent to their entry. On cross-examination, he testified that he was sleeping when the officers arrived, and when he emerged from the room, he closed but did not lock the door. He admitted that he saw his father sign the consent to search form, but he explained that they did not “exactly know that was a consent to search” form. He admitted, however, that he knew that the officers were about to search the room. He also admitted that he told the officers that the stolen iPad was in the room before his father signed the consent form.
A review of the record reveals no patent errors.
By his first assignment of error, the defendant contends that the trial court erred by denying his motion to suppress the statement. Although he gave a statement at the police station after twice being advised of his rights, the defendant makes no argument as to that statement. Rather, his claim is addressed only to his admission that the stolen property was in his bedroom, made after his father signed the consent to search form.. He asserts that he was in custody at the time he made his statement, and the officers did not advise him of his Miranda rights until after he made the statement. In addition, he argues that the officers did not have, reasonable suspicion to detain him at the time that he made his statement. The defen *1124 dant’s argument fails for two reasons: (1) the evidence in the record does not indicate that he was “in custody” for Miranda purposes at the time he made the statement, and (2) the statement was not the product of a custodial interrogation.
As per La.C.Cr.P. art. 703D, the State had the burden of showing that the defendant’s statements were admissible. In addition, La. R.S. 15:451 provides: “Before what [purports] to be a confession can be introduced in evidence, it must |Bbe affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.” See State v. Gradley, 97-0641, p. 9 (La.5/19/98), 745 So.2d 1160, 1166. As noted in State v. Vigne, 2001-2940 (La.6/21/02), 820 So.2d 583, in order for a statement made by a suspect in custody to be admissible at trial, police officers must advise the suspect of his Fifth Amendment rights prior to interrogating him. Generally, a trial court’s ruling on a motion to suppress a statement is entitled to great weight and will not be disturbed unless clearly unsupported by the evidénce. Id., at p. 6, 820 So.2d at 537.
Nonetheless, an,officer need not advise a person not in custody of his rights prior to taking his statement in order for his statement to be admissible at trial. As this court noted in State v. Watson, 99-1448, pp. 18-19 (La.App. 4 Cir. 8/23/00), 774 So.2d 232, 242:
The protections of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966) are only applicable when a person is the subject of a custodial interrogation. State v. Pomeroy, 97-1258 (La.App. 5 Cir. 5/13/98), 713 So.2d 642. A suspect is “in custody” for Miranda purposes when placed under formal arrest or when a reasonable person in the suspect’s position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest. State v. Hammond, 97-1677 (La.App. 4 Cir. 12/30/97), 706 So.2d 530. Under La.C.Cr.P. [art.] 201, in order to constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him. An arrest occurs when the circumstances indicate intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Raheem, 464 So.2d 293, 296 (La.1985); State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276.
|fiAs the Court stated in State v. Menne, 380 So.2d 14, 15 (La.1980), a defendant must be advised of his rights “whenever the circumstances reasonably indicate that the interrogee has been deprived of his freedom in any significant way.”
The defendant argues that he was in custody when he admitted that the stolen property was in his bedroom, noting that the officer had already placed him in handcuffs by the time he made this admission. He equates the placing of handcuffs with being “in custody” for Miranda purposes, and argues that the officers did not have reasonable suspicion to detain him and place him in handcuffs. However, a mere detention does not trigger the need for Miranda warnings, and the use of handcuffs does not necessarily escalate a detention into a state of being “in custody” for Miranda purposes. In State v. Fisher, 97-1133, pp. 4-6 (La.9/9/98), 720 So.2d 1179, 1182-83, the Court described the three levels of interaction between the police and citizens and found that an investigatory stop is a lesser form of detention than that of an arrest.
*1125 Since Fisher, both the Louisiana Supreme Court and- this court have been repeatedly faced with the question of whether a brief detention, for which only reasonable suspicion is required, occurred or whether the restraint of a subject in handcuffs escalated the detention to an arrest, as a person clearly would not feel free to leave while handcuffed.
In State v. Adams, 2001-3281, pp. 4-5 (La.1/14/03), 836 So.2d 9, 12, the Court found that an investigatory stop did not evolve into an arrest even though the officers detained the' female defendant and handcuffed her while they waited fifteen minutes for the arrival of a female officer to frisk her. Likewise, in State v. Porche, 2006-0312 (La.11/29/06), 943 So.2d 335, the Court found that the detention of the defendant at the scene of a crime and his forced relocation to his 17nearby apartment did not amount to an arrest. The Court discussed the use handcuffs and its effects on an investigatory stop:
Inherent in the right of the police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention. [Muehler v. Mena, 544 U.S. [93] at 99, 125 S.Ct. [1465] at 1470 [161 L.Ed.2d 299 (2005) ] (“ ‘Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.”’)(quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443 (1989)); United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir.1993)(“Since police officers should not be required to take unnecessary risks in performing their duties, they are ‘authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a Terry ] stop.’ ”)(quoting United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675, 683-84, 83 L.Ed.2d 604 (1985)).
Nevertheless, the use of handcuffs incrementally increases the degree of force used in detaining an individual. Mena, 544 U.S. at 99, 125 S.Ct. at 1470 (“The imposition of correctly applied handcuffs - on Mena, who was already being lawfully detained during a search of the house, was undoubtedly a separate intrusion in addition to detention in the converted garage.”); State v. Broussard, 00-3230, p. 4 (La.5/24/02), 816 So.2d 1284, 1287 (“ ‘There is no question that the use of handcuffs, being one of the most recognizable indicia of a traditional arrest, substantially aggravates the intrusiveness of a putative Terry stop.’”)(quoting United States v. Acosta-Colon, 157 F.3d 9, 18 (1st Cir.1998)(internal quotation marks omitted)). Thus, because the police conducting an investigatory stop “may not ... seek to verify their suspicions by means that approach the conditions of arrest,” Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983), the use of handcuffs must appear objectively reasonable “in light of the facts and circumstances confronting [the police],” taking into account “the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.” Graham, 490 U.S. at 397, 109 S.Ct. at 1872; Broussard, 00-3230 at 4, 816 So.2d at 1287 (“‘Thus, when the government seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a Terry stop, it must be able to point to . some specific fact or circumstance that could have supported a reasonable belief that lathe use of such restraints was necessary to carry out the legitimate *1126 purpose of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm.’ ’’)(quoting Acosta-Colon, 157 F.3d at 18-19). If the added intrusion is not warranted under particular circumstances, a Terry stop may escalate into a de facto arrest requiring probable cause to render it valid. United States v. Melendez-Garcia, 28 F.3d 1046, 1053 (10th Cir.l994)(“Because the specific nature of this stop [in which defendant was handcuffed and strapped into a police cruiser] was not justified under the Terry doctrine,. we must treat it as an arrest, requiring probable cause.”); Broussard, 00-3230, pp. 3-4, 816 So.2d at 1287 (“[B]revity alone does not always distinguish investigatory stops from arrests, as the former may be accompanied by arrest-like features, e.g., use of drawn weapons and handcuffs, which may, but do not invariably, render the seizure a de facto arrest.”)(citing Acosta-Colon, 157 F.3d at 18-19)(emphasis added).
Porche, at pp. 7-9, 943 So.2d at 339-40. The Court then determined that under the circumstances, including “the brevity of respondent’s detention in handcuffs before he was lawfully arrested, and the changing nature of the police investigation ... and giving due deference to the decisions made in the field by police officers under the press of ‘tense, uncertain, and rapidly evolving’ circumstances, Graham, 490 U.S. at 397,109 S.Ct. at 1872,” id., at pp. 10-11, 943 So.2d at 341, handcuffing and escorting the defendant to his apartment to get his identification did not escalate the detention to an arrest.
In State v. Palmer, 2009-0044, pp. 9-10 (La.7/1/09), 14 So.3d 304, 310, the Louisiana Supreme Court found that the handcuffing of several people who fled from the scene when officers were executing a warrant did not elevate the detention to an arrest. Likewise, in State v. Baudoin, 2010-2868 (La.3/4/11), 56 So.3d 233, the Court found that police officers were justified in handcuffing a defendant during an encounter that evolved into an investigatory stop and a frisk l9when the defendant put his hand in his pocket and refused to remove it. The Court reasoned:
At that point, the officers made a reasonable decision to detain all three individuals and thereby take unquestioned command over a fluid and uncertain situation. Brendlin v. California, 551 U.S. 249, [257], 127 S.Ct. 2400, 2407, 168 L.Ed.2d 132 (2007)(“[A] sensible person would not expect a police officer to allow people to come and go freely from the physical focal point of an investigation into faulty behavior or wrongdoing.... ‘the risk of harm to both the police and [the persons they detain] is minimized if the officers routinely exercise unquestioned command of the situation.’ ’’)(quoting Michigan v. Summers, 452 U.S. 692, 702-703, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (1981)); State v. Porche, [20]06-0312, p. 5 (La.11/29/06), 943 So.2d 335, 338 ... Given the unresolved question of the tip involving homicide suspects, the officers’ use of handcuffs to detain the men as they questioned them briefly did not transform the stop into a de facto arrest. Cf. State v. Adams, 2001-3231, pp. 4-5 (La.1/14/03), 836 So.2d 9, 12....
Baudoin, at p. 3, 56 So.3d at 235.
In State v. Lazard, 2008-0677 (La.App. 4 Cir. 12/10/08), 2 So.3d 492, this court concluded that the decision to handcuff the defendant pending the arrival of a canine unit did not convert an investigatory stop to an arrest. This Court focused on the fact that he was handcuffed for only a brief time until he was formally arrested; also, one of the police officers recognized him from a prior arrest and knew that he was scheduled to go to trial the next day. “Thus, Mr. Lazard may have become a *1127 flight risk, particularly in light of the extent of his nervousness and inability to speak.” Id., at p. 9, 2 So.3d at 498.
Recently, in State v. Turner, 2013-0180 (La.3/1/13), 108 So.3d 753, the Louisiana Supreme Court again emphasized that the use of handcuffs or the defendant’s subjective belief that he has been arrested are not dispositive of the issue:
110First, we note that the Trial Court’s de facto arrest analysis begins with a faulty premise, stating the circumstances of the defendant’s detention “would easily leave a reasonable person to believe that they were not free to leave and was therefore not within the scope of Terry.” A suspect’s inability to leave merely establishes whether a “seizure” has occurred, not whether a seizure was of the Terry stop or arrest variety. 4 Wayne R. LaFave, Search and Seizure § 9.2(g) (5th ed.2013). Rather, the determination of whether a detention exceeds the bounds of a Terry stop is a fact-intensive inquiry. State v. Miller, [20]00 — 1657, pp. 2-3 (La.10/26/01), 798 So.2d 947, 949 (per curiam). In this case, there is no doubt the officer seized the defendant. However, the facts the Trial Court found pertinent — that defendant was detained in a private office for an hour while awaiting the arrival of a K-9 unit and was eventually handcuffed — do not support its conclusion that the officer’s lawful investigatory stop escalated into an a de facto arrest unsupported by probable cause.
[[Image here]]
Additionally, the Trial Court placed great weight on the fact the officer handcuffed the defendant,, stating this was unreasonable and transformed the detention into an unlawful arrest. This Court has stated the use of handcuffs during a putative Terry stop is reasonable if the State can “ ‘point to some specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purposes of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm.’ ” State v. Porche, [20]06-0312, p. 8 (La.11/29/06), 943 So.2d 335, 339 (per curiam) (emphasis added) (citations omitted)....
Turner, at pp. 1-3, 108 So.3d at 753-55.
The mere fact that the officers in this case placed the defendant in handcuffs did not escalate his detention to “custody” that required the advisement of Miranda warnings. Det. James explained that because the defendant began pacing back and forth near the storage room while the officers advised him of the investigation, they decided to place him in handcuffs for officers’ safety while they spoke with him. Moreover, given the fact’ that the tracking device showed that the stolen iPad |nwas in the apartment, the officers had reasonable suspicion to detain the defendant while they questioned him.
More importantly, the defendant’s admission was not the product of custodial interrogation; instead, he made the admission when his father consented to a search of the bedroom. Even when a defendant is in custody, his spontaneous statements need not be suppressed if they are not the product of a custodial interrogation. See State v. Smith, 2000-1838, pp. 3-4 (La.5/25/01), 785 So.2d 815, 817.
The trial court did not err by refusing to suppress the defendant’s statement. This assignment of error has no merit.
By his remaining assignment of error, the defendant asserts that the trial court erred by denying his motion to suppress the evidence. Specifically, he argues that the trial court erred by finding that *1128 the officers reasonably believed that his father had the authority to consent to a search of his room. A review of the facts shows that this argument has no merit.
As per La.C.Cr.P. art. 703D, the State has the burden of showing any evidence seized in the absence of a warrant was lawfully seized. See State v. Wells, 2008-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581. It is well-settled that an appellate court should review a trial court’s ruling under a deferential standard with regard to factual determinations, while legal findings are subject to a de novo standard of review. State v. Hunt, 2009-1589, p. 6 (La.12/1/09), 25 So.3d 746, 751. Moreover, a trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion. Id., at p. 7, 25 So.3d at 752.
] 12Courts have recognized the authority of a co-inhabitant to consent to the search of a residence and have also recognized the apparent authority of a person whom the officers believed had the authority to consent to a search. For example, in State v. Edwards, 97-1797, p. 11 (La.7/2/99), 750 So.2d 893, 901, the Court found that the defendant’s girlfriend, with whom he shared a bedroom, and her mother, who owned the house where the three of them lived, had the apparent authority to consent to the search of the bedroom. Similarly, in State v. Wheeler, 2004-0953, pp. 13-15 (La.App. 4 Cir. 3/9/05), 899 So.2d 84, 91-93, this court found that the owner of an apartment where the defendant had stayed for a few days could consent to its search because the officers reasonably believed that the owner had common control over the apartment, citing Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). In Rodriguez, the Court held that the officers were justified in relying on the consent given by the defendant’s former girlfriend, who unbeknownst to them had moved out of the defendant’s apartment, because she unlocked the door to the apartment and invited them inside. See also State v. Gettridge, 2008-0786, pp. 1-2 (La.6/6/08), 987 So.2d 247, 248, where the Court found that the officers were justified in relying on the consent of a person who told them that she was the leaseholder of the apartment.
In Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), the Court found that officers did not have valid consent to search a residence even where a co-inhabitant gave the officers consent to search, but the potential defendant, who was on the scene, refused to consent. The Court distinguished Rodriguez and U.S. v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), which held that a common occupant could consent to the search of a defendant’s residence. The Court found that officers could not rely on the apparent authority” to consent given by a co-inhabitant when the defendant expressly refused to consent to the search. The Court held that the consenting inhabitant had no authority to prevail over the choice of a co-inhabitant who was present and refused to allow entry, noting: “Since the co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all.” Id. at 115, 126 S.Ct. at 1523. The Court found that a tenant’s Fourth Amendment right to be free from unreasonable searches primes his co-tenant’s interest in allowing the entry of police officers to bring criminal activity to light. The Court held that “if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant’s permis *1129 sion does not suffice for a reasonable search.” Id. at 121, 126 S.Ct. at 1527.
Here, the defendant’s bedroom was located in his father’s apartment. Although the defendant testified that he kept the door locked, nothing indicated to the officers while obtaining his father’s consent that his father did not have access to the room. The defendant testified at the hearing that he was twenty years old, and Det. James testified that the defendant told her that the only computer that he had in his room was a HP computer that he used for college. Thus, the officers justifiably relied on the defendant’s father’s apparent authority to consent to the search of the bedroom of his son who was a student.
Moreover, the record indicates that the defendant did not object to the search or attempt to counter his father’s consent. Indeed, the defendant admitted at the hearing that he did not object to his father’s consent. Thus, the trial court did not | uerr by denying the motion to suppress the evidence seized from the defendant’s bedroom. This assignment has no merit.
Accordingly, the defendant’s conviction and sentence are affirmed.
AFFIRMED.