ROSEMARY LEDET, Judge.
hln this criminal appeal, the defendant, Gerald Stewart, appeals his conviction and sentence as a multiple offender for attempted possession of heroin. Mr. Stewart’s sole assignment of error is that the district court erred in denying his motions to suppress the evidence and statements. Finding no error, we affirm.

STATEMENT OF THE CASE

On July 13, 2011, the State of Louisiana charged Mr. Stewart with one count of possession of heroin. Mr. Steward pled not guilty.[1] On August 25, 2011, the district court denied Mr. Stewart’s motion to suppress the evidence, but granted his motion to suppress his statements. This court granted the State’s writ, finding that the district court erred in granting Mr. Stewart’s motion to suppress his statements. State v. Stewart, 11-1223 (La.App. 4 Cir. 10/10/11) (unpub.). Mr. Stewart waived his right to a jury trial. On May 25, 2012, the district court found Mr. Stewart guilty of attempted possession of heroin. On June 15, 2012, the district court denied Mr. Stewart’s motion for post-verdict judgment of acquittal and sentenced him to serve five years at hard labor.
LOn October 15, 2012, the State filed a multiple bill charging Mr. Stewart as a second offender. Mr. Stewart pled guilty to the multiple bill. The district court vacated Mr. Stewart’s original sentence and re-sentenced him as a second offender to serve eleven years at hard labor. This appeal followed.

STATEMENT OF THE FACTS

At trial, Officer Everett Briscoe testified that on July 3, 2011, he and his partner, Officer Jon-Rene Sanjurjo, were dispatched to the parking lot of the Rally’s on South Carrollton in Orleans Parish to investigate a single-car accident with injury. Upon arrival the officers attempted to render aid to the driver of the car, Ryan Couget,[2] who was unconscious in the car.
After EMS personnel arrived, Officer Briscoe spoke with a Rally’s employee.[3] *168 The employee pointed out Mr. Stewart, who was walking away from the scene. Officer Briscoe approached Mr. Stewart and asked him where the items that he retrieved from the vehicle were. Mr. Stewart took Officer Briscoe to the passenger side of the vehicle and told the officer that he threw the items on the ground. Officer Briscoe saw a couple of empty pieces of foil lying on the ground next to the car. Once the officer determined that narcotics were possibly involved, he decided to detain Mr. Stewart until they finished the investigation. As Officer Briscoe was placing Mr. Stewart in handcuffs, the officer noticed that Mr. Stewart had something clutched in his hand. Officer Briscoe asked Mr. Stewart what was in his hand. Mr. Stewart then threw down a napkin, which contained pieces of aluminum foil. Officer Briscoe secured Mr. Stewart in his police unit while [^Officer Sanjurjo retrieved the napkin and foils. The foils appeared to contain heroin. Mr. Stewart was ultimately arrested.
On cross-examination, Officer Briscoe testified that Mr. Stewart was one of the people gathered around Mr. Couget’s car when they arrived. Officer Briscoe did not suspect Mr. Stewart of any wrongdoing at that time. Officer Briscoe admitted that at the suppression hearing he testified that Mr. Stewart appeared concerned about the driver’s condition.[4] EMS personnel arrived approximately five minutes after the officers, and Mr. Stewart still remained in the parking lot. According to Officer Briscoe, he asked Mr. Stewart to stop as Mr. Stewart was walking away. Mr. Stewart was not running away, and he was cooperative with Officer Briscoe. When Officer Briscoe asked Mr. Stewart about removing items from Mr. Couget’s car, Mr. Stewart replied that he removed the foil packets and threw them on the ground because he did not want Mr. Coug-et to get into trouble. Officer Briscoe stated that he did not see Mr. Stewart attempt to conceal anything in his pockets or to take anything from his pockets. After Mr. Stewart showed him the foils on the ground, he advised Mr. Stewart of his Miranda rights and handcuffed him.[5] Mr. Stewart also had a backpack, which Officer Briscoe believed his partner searched.
Officer Jon-Rene Sanjurjo testified that Mr. Couget was still in the driver’s seat of the car when they arrived and that Mr. Couget was unconscious but breathing. EMS personnel arrived shortly thereafter. Officer Sanjurjo testified that he found a spoon with crystalized residue and burn marks sitting in a cup in the |4middle console of the car. He stated that Officer Briscoe stopped Mr. Stewart after speaking with a Rally’s employee. According to Officer Sanjurjo, after Mr. Stewart was placed in the police unit, Mr. Stewart repeated the statements he made outside of Mr. Couget’s car regarding removing the empty foils from the car. Officer Sanjurjo testified that he retrieved the empty foils after Officer Briscoe pointed them out to him. He also retrieved the napkin with the foils that Mr. Stewart dropped. On cross-examination, Officer Sanjurjo testified that Mr. Couget admitted to EMS personnel that he had just used “a little bit” of heroin.
*169 The parties stipulated that Glenn Guil-lot, if called to testify, would have been qualified as an expert in narcotics testing and analysis. The parties also stipulated to the contents of Mr. Guillot’s report, which stated that the evidence seized tested positive for heroin.

DISCUSSION

Errors Patent

A review of the record reveals no patent error that requires any action by this court.[6]

Assignment of Error

As noted at the outset, Mr. Stewart’s sole assignment of error is whether the district court erred by denying his motions to suppress the evidence and statements. Mr. Stewart argues that his admissions— that he took the empty foils out of Mr. | sCouget’s car and threw them outside the car and that he did this because he did not want Mr. Couget to get into trouble — were both made while he was in custody. He contends that his statements should have been suppressed because the officer failed to advise him of his Miranda rights before asking him what he took out of the car. He contends that without these admissions, the officers would not have handcuffed him and found the heroin he was holding in his hand. Thus, he contends the heroin was the product of his illegally-taken statements; and the district court erred by denying his motion to suppress it as well.
As noted above, the district court granted his motion to suppress the statements, but this court reversed, finding that Mr. Stewart was not in custody for Miranda purposes at the time he made his admissions that he took the foils out of the car because he did not want Mr. Couget to get in trouble. That ruling was based solely on the suppression hearing transcript. On appeal, this court may also consider the evidence adduced at trial to determine the merits of his claim that the evidence and statements should have been suppressed. See State v. Leger, 06-0011 (La.7/10/06), 936 So.2d 108; State v. Sherman, 04-1019 (La.10/29/04), 886 So.2d 1116. We separately address the suppression of the statements and suppression of the evidence.

Suppression of the Statements

Because Mr. Stewart’s claim that the evidence must be suppressed is based upon his claim that the discovery of the evidence was the product of his illegally-obtained statements, we first must determine whether the district court erred by denying the motion to suppress the statements. This court set forth the standard for determining the admissibility of a defendant’s statement in State v. Barabin, 13-0334, pp. 4-6 (La.App. 4 Cir. 9/11/13), 124 So.3d 1121, 1128, as follows:
As per La.C.Cr.P. art. 703D, the State had the burden of showing that the defendant’s statements were admissible. In addition, La. R.S. 15:451 provides: “Before what [purports] to be a confession can be introduced in evidence, it *170 must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.” See State v. Gradley, 97-0641, p. 9 (La.5/19/98), 745 So.2d 1160, 1166. As noted in State v. Vigne, 2001-2940 (La.6/21/02), 820 So.2d 533, in order for a statement made by a suspect in custody to be admissible at trial, police officers must advise the suspect of his Fifth Amendment rights prior to interrogating him. Generally, a trial court’s ruling on a motion to suppress a statement is entitled to great weight and will not be disturbed unless clearly unsupported by the evidence. Id., at p. 6, 820 So.2d at 537.
An officer does not have to advise a person not in custody of his rights prior to taking his statement in order for his statement to be admissible. In State v. Watson, 99-1448, pp. 18-19 (La.App. 4 Cir. 8/23/00), 774 So.2d 232, 242, this court set forth the standard for when a person must be read his Miranda rights:
The protections of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966) are only applicable when a person is the subject of a custodial interrogation. State v. Pomeroy, 97-1258 (La.App. 5 Cir. 5/13/98), 713 So.2d 642. A suspect is “in custody” for Miranda purposes when placed under formal arrest or when a reasonable person in the suspect’s position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest. State v. Hammond, 97-1677 (La.App. 4 Cir. 12/30/97), 706 So.2d 530.
In the Barabin case, officers investigating a burglary were directed to the defendant’s residence. While conducting the investigation, the defendant began pacing and walking toward a storage room. Thus, the officers handcuffed the defendant. The officers asked his father if they could search the defendant’s room, and the defendant admitted that the stolen property was in his room. On appeal, the defendant asserted that his admission should have been suppressed because at [7the time he made the admission, he was in custody, as the officers had handcuffed him, and they failed to advise him of his Miranda rights. This court disagreed, noting that “a mere detention does not trigger the need for Miranda warnings, and the use of handcuffs does not necessarily escalate a detention into a state of being ‘in custody’ for Miranda purposes.” Barabin, 13-0334 at p. 6, 124 So.3d at 1124.
This court in Barabin also found that the defendant’s statement was admissible because it was spontaneous and not the product of interrogation. In so finding, this court cited State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, in which the Louisiana Supreme Court held that an investigatory stop is a lesser form of a detention than an arrest. This court discussed several cases regarding when a detention with the use of handcuffs escalates into an arrest. See State v. Adams, 01-3231 (La.1/14/03), 836 So.2d 9 (finding that a fifteen-minute detention, with the use of handcuffs, while the officers awaited the arrival of a female officer to frisk the defendant, did not transform the stop into a custodial arrest); State v. Palmer, 09-0044 (La.7/1/09), 14 So.3d 304 (finding that the handcuffing of suspects fleeing a house where a search warrant was being executed did not rise to the level of an arrest); and State v. Lazard, 08-0677 (La.App. 4 Cir. 12/10/08), 2 So.3d 492 (finding the handcuffing of the defendant to await the arrival of a drug detection dog was not an arrest).
*171 In the Barabin case, this court also discussed State v. Porche, 06-0812 (La.11/29/06), 943 So.2d 385, in which the court found no custodial arrest even though the officers detained the defendant at the scene of the crime and forced him to relocate to his apartment while in handcuffs to retrieve his identification. The Porche court stated:
Islnherent in the right of the police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention. [Muehler v.] Mena, 544 U.S. [93] at 99, 125 S.Ct. [1465] at 1470 [161 L.Ed.2d 299 (2005) ] (“ ‘Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.’ ”)(quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443 (1989)); United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir.1993)(“Since police officers should not be required to take unnecessary risks in performing their duties, they are ‘authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a Terry ] stop.’ ”) (quoting United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675, 683-84, 83 L.Ed.2d 604 (1985)).
Porche, 06-0312 at pp. 7-9, 943 So.2d at 339-40. The Porche court rejected the defendant’s argument that his detention was an arrest, finding that handcuffing and escorting the defendant to his apartment to get his identification did not escalate the stop to an arrest considering the circumstances of the case, including “the brevity of respondent’s detention in handcuffs before he was lawfully arrested, and the changing nature of the police investigation ... and giving due deference to the decisions made in the field by police officers under the press of ‘tense, uncertain, and rapidly evolving’ circumstances, Graham [v. O’Connor ], 490 U.S. [396] at 397, 109 S.Ct. [1865] at 1872 [1989].” Porche, 06-0312 at pp. 10-11, 943 So.2d at 341.
In State v. Turner, 13-0180 (La.3/1/13), 108 So.3d 753, the Louisiana Supreme Court emphasized that neither a defendant’s belief that he has been arrested nor the use of handcuffs determines whether a defendant has been arrested. On the issue of whether the use of handcuffs escalates a detention into an arrest, the Supreme Court stated:
First, we note that the Trial Court’s de facto arrest analysis begins with a faulty premise, stating the circumstances of the defendant’s detention “would easily leave a reasonable person to labelieve that they were not free to leave and was therefore not within the scope of Terry.” A suspect’s inability to leave merely establishes whether a “seizure” has occurred, not whether a seizure was of the Terry stop or arrest variety. 4 Wayne R. LaFave, Search and Seizure § 9.2(g) (5th ed.2013). Rather, the determination of whether a detention exceeds the bounds of a Terry stop is a fact-intensive inquiry. State v. Miller, 00-1657, pp. 2-3 (La.10/26/01), 798 So.2d 947, 949 (per curiam). In this case, there is no doubt the officer seized the defendant. However, the facts the Trial Court found pertinent — that defendant was detained in a private office for an hour while awaiting the arrival of a K-9 unit and was eventually handcuffed — do not support its conclusion that the officer’s lawful investigatory stop escalated into a de facto arrest unsupported by probable cause.
* * *
Additionally, the Trial Court placed great weight on the fact the officer handcuffed the defendant, stating this *172 was unreasonable and transformed the detention into an unlawful arrest. This Court has stated the use of handcuffs during a putative Terry stop is reasonable if the State can “‘point to some specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purposes of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm.’ ” State v. Porche, 06-0312, p. 8 (La.11/29/06), 943 So.2d 335, 339 (per curiam) (emphasis added) (citations omitted)....
Turner, 13-0180 at pp. 1-3, 108 So.3d at 753-55.
A review of the suppression hearing and trial testimony reveals that Mr. Stewart made the statements at issue before being advised of his Miranda rights. Mr. Stewart contends that he was “in custody” given that the officer approached him, told him to stop, and prevented him from leaving. Further, after asking him what he had taken from the car, Officer Briscoe suspected him of a possible narcotics violation and handcuffed him. Mr. Stewart contends that this was not simply an investigatory stop, but rather he was in custody for constitutional purposes. Mr. Stewart contends that because he made these admissions while in custody and before being advised of his Miranda rights, the statements should have been suppressed. We disagree.
|1(lAs noted in Watson, supra, “[a] suspect is ‘in custody’ for Miranda purposes when placed under formal arrest or when a reasonable person in the suspect’s position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest.” Watson, 99-1448 at p. 19, 774 So.2d at 242. Although Officer Briscoe believed that Mr. Stewart took something out of the car, the officer’s actions amounted to only an investigatory stop at that juncture when he stopped and questioned Mr. Stewart. Moreover, the officer testified that it was only after Mr. Stewart told him that he had taken the empty foils out of the car because he did not want Mr. Couget to get in trouble and showed the officer where he had thrown the empty foils that the officer handcuffed Mr. Stewart. Although the statements were made during a detention, it was not a custodial detention as defined by the jurisprudence discussed above. Thus, Officer Briscoe was not required to advise Mr. Stewart of his Miranda rights before asking him what he took from Mr. Couget’s car. The officer’s failure to do so did not render the statements inadmissible.

Suppression of the Evidence

Mr. Stewart also contends that the district court erred in denying his motion to suppress the heroin that he dropped when the officer handcuffed him. According to Mr. Stewart, since his statements were illegally obtained, it follows that the evidence that was seized as a result of the statements was tainted by the illegality. As discussed above, we find the statements were not illegally obtained. Given our finding that Mr. Stewart’s statements were not illegally obtained, the evidence obtained as a result of these statements likewise was not illegally obtained. Accordingly, Mr. Stewart’s sole assignment of error — that the district |ncourt erred in denying his motion to suppress statements and the evidence — lacks merit.

DECREE

For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.
LOVE, J., Concurs and Assigns Reasons.

.Ryan Couget was also charged in the same bill of information with possession of heroin. He pled guilty and was sentenced to four years active probation. He is not a party to this appeal.

. There is no evidence that the defendant, Mr. Stewart, knew Mr. Couget before this incident.

. The Rally's employee’s statements were not admitted at trial because the employee refused to testify. However, at the hearing on *168 the motions to suppress, Officer Briscoe testified that he and his partner were notified by one of the employees at the location that she observed Mr. Stewart take something of out of the vehicle after the accident.

. Officer Briscoe was the sole witness at the suppression hearing. His testimony at the suppression hearing, with minor exceptions, was similar to his trial testimony.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The district court failed to order that Mr. Stewart’s sentence as a second offender be served without benefit of probation or suspension of sentence as required by La. R.S. 15:529.1G. However, the district court did not suspend the sentence and placed Mr. Stewart on probation. In addition, as per La. R.S. 15:301.1A and State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, the sentence is deemed to have been imposed with these restrictions of benefits, even in the absence of the district court’s failure to delineate them. See State v. Barnes, 11-1421 (La.App. 4 Cir. 9/19/12), 100 So.3d 926, writ denied 12-2251 (La.4/1/13), 110 So.3d 575; State v. Phillips, 03-0304 (La.App. 4 Cir. 7/23/03), 853 So.2d 675.